PHŒBE A. YOUNG vs. THE CITY OF NEW HAVEN.

A city street was being macadamized under the direction of the city authorities, and a steam roller used in the work was left in the street during the suspension of work from Saturday noon to Monday morning, leaving room for travelers to pass. The roller was a very useful instrument in compacting the bed of the road, but was an object calculated to frighten horses of ordinary gentleness, and while so left frightened the plaintiff's horse, which was of that character, causing an injury. In a suit against the city for damages the court below found that the injury was caused by the negligence of the defendants. On a motion for a new trial by the defendants it was held that the court below had decided the fact against the defendants, and that as a question of fact it could not be reviewed by this court. Held also that the question was wholly one of negligence.

[CARPENTER, J., dissenting, and holding that the city could be liable only for a defective highway, and that the steam roller being a proper instrument to be used in the reparation of the street, which reparation was a public duty, its mere use could not be negligence, and a negligence of the employes of the city in its use could not make the city liable.]

TRESPASS ON THE CASE, for an injury to the plaintiff caused by the negligence of the defendants; brought to the Superior Court for the county of New Haven, and tried on the general issue, closed to the court, before *Minor, J.* The declaration contained two counts. The first alleged that the defendants negligently left upon a public street of the city a steam roller, which was an object calculated to frighten horses, and that the plaintiff's horse, without any fault on her part, became frightened as she was driving by

and that she was thrown out and injured.   The second count, which was added by way of amendment after the cause had been entered in court, alleged the same facts, with the further allegation that the street was rendered thereby defective and dangerous, and that the injury was caused by reason of the defective condition of the street.

The court found the following facts, and made the finding a part of the record.

In May, 1871, the defendants purchased a steam roller, weighing fifteen tons, for the purpose of macadamizing their highways, a machine highly useful, but not absolutely necessary for the purpose.

Previously to the 9th day of July, 1871, the city of New Haven had commenced repairing Whalley Avenue, one of the highways of the city which by law it was bound to keep in repair, by macadamizing the central part thereof to the width of twenty-five feet, and leaving a space on each side of ordinary road of about fifteen feet in width between the part being repaired and the curb stones.   On the space so left on one side was the track of one of the horse railroads.   Over the space left on the other side horses and carriages could and did pass while the repairs were being made.

The repairing was done under the direction of the board of road commissioners of the city, and the steam roller was under the direction of the board, and was used by them in the repairing of Whalley Avenue.

On Saturday, the 8th of July, 1871, before noon, the steam roller was, by those having charge of it in making the repairs on the avenue, left standing near the centre of the avenue, on that portion of the same being macadamized, and remained there over Sunday and until the following Monday morning.

The steam roller, whether still or in motion, was an object calculated to frighten horses of ordinary gentleness, and was on a part of the road bed which, though then impassable by reason of the repairs, when not being repaired was used for travel by horses and carriages ; and it was an object that by its size would obstruct travel.

On the 9th of July the plaintiff was passing along Whalley Avenue, with a horse and carriage, on that portion of the avenue left between the curb and the part under repair, and when near the roller her horse, being frightened by it, suddenly shied, overturned the carriage, and threw her and the man driving for her on the ground, causing the injuries complained of. Her horse was of ordinary gentleness.

The injuries to the plaintiff were caused by negligence and the want of ordinary care on the part of the defendants, and not by any negligence on her part which essentially contributed to the injury.

On these facts the defendants claimed that at law they were not liable in this action for the injuries received by the plaintiff.

The court overruled their claim and rendered judgment for the plaintiff to recover $400 damages and costs. The defendants brought the record before this court by a motion in error, which, when the case came up for a hearing, was by agreement of counsel changed into a motion for a new trial. The objection to the case as it stood upon the motion in error is stated in the opinion of the court.

*Watrous*, in support of the motion, contended that the amendment, by the addition of the second count, was improperly allowed, inasmuch as it set up a different ground of liability from the first, and so a different cause of action ; that the first count did not warrant a recovery against the defendants, because it set up only a common law liability for negligence, while the defendants could be liable only under the statute for negligently leaving the street in a defective condition ; that the judgment could not be sustained under the second count because it was not found that the street was in a defective condition ; and that the roller, being a proper instrument to use in repairing the street, the defendants could not be liable for using it, and that it was not found or claimed that they had not properly left it where they did, it being necessary to leave it there during the suspension of work over Sunday ; citing *Wolcott* v. *Swampscott*, 1 Allen,

101 ; *Keith* v. *Easton*, 2 id., 552 ; *Kingsbury* v. *Dedham*, 13 id., 186 ; *Adams* v. *Natick*, id., 429 ; *Cook* v. *Charlestown*, 98 Mass., 80 ; *Barney* v. *Lowell*, id., 570 ; *Vinal* v. *Dorchester*, 7 Gray, 421 ; *Davis* v. *Bangor*, 42 Maine, 522 ; *Hewison* v. *City of New Haven*, 34 Conn., 134, 136 ; *S. C.*, 37 id., 475.

*L. E. Munson*, contra, cited, as to the liability of the city, *Dimock* v. *Suffield*, 30 Conn., 132 ; *Hewison* v. *City of New Haven*, 34 id., 136 ; *Thorp* v. *Brookfield*, 36 id., 320 ; *Munson* v. *Derby*, 37 id., 298 ; *Bronson* v. *Southbury*, id., 199 ; *Ayer* v. *City of Norwich*, 39 id., 376; *Willey* v. *Portsmouth*, 35 N. Hamp., 303 ; *Davis* v. *Hill*, 41 id., 329 ; *Chamberlin* v. *Enfield*, 43 id., 356 ; *Gladden* v. *Reading*, 38 Verm., 52 ; *Morse* v. *Richmond*, 41 id., 441 ; *Ireland* v. *Oswego Plank Road Co.*, 13 N. York, 526 ; *Palmer* v. *Andover*, 2 Cush., 609 ; *Coggswell* v. *Lexington*, 4 id., 307 ; *Hayden* v. *Attleborough*, 7 Gray, 338 ; *Winship* v. *Enfield*, 42 N. Hamp., 197 ; *Bartlett* v. *Hooksett*, 48 id., 18 ; *Manchester* v. *City of Hartford*, 30 Conn., 120 ; Angell on Highw., § 232.

PARK, J.   This case comes irregularly before this court. It is brought up on a motion in error ; and it does not appear that any of the questions set forth in the assignment of errors claimed to have been committed by the court below, were ever brought to the attention of the court, or passed upon during the trial.   For aught that appears they are questions now made for the first time, and if so our rules deny to the party making them the right to be heard upon them.   This was stated to counsel at the commencement of the argument, and it was agreed between the parties that the motion in error might be considered as a motion for a new trial, and that the various questions set forth in it were made in the court below, and with this understanding we have consented to hear the cause.

It appears in the finding of the court that the defendants were guilty of a want of reasonable care in leaving a certain steam roller upon one of the public streets in the city of

New Haven called Whalley Av:nue; that from Saturday noon until the Monday. morning following the roller was left near the travelled part of the avenue as the same was then used by the public, owing to the fact that the avenue was being macadamized, and only a part of it could be used; that the roller was calculated to frighten horses of ordinary gentleness and frightened the plaintiff's horse, which was of that character, as the plaintiff was driving along the avenue in the exercise of reasonable care; and that the frightened horse overturned the plaintiff's carriage and threw her upon the ground, thus causing the injuries of which she complains.

These are the principal and important facts of the case, and the question is, whether they lay the foundation of a right to recover against the defendants for the injury thus produced.

The counsel for the defendants rely with confidence upon the fact that the roller was useful, and had been used by the authorities of the city in macadamizing the avenue; that it had been so used up to Saturday noon preceding the accident, and was left near the place where the injury occurred in order to be used again on the Monday following.

If it was our duty to review the question of fact in this part of the case, and determine whether the court below erred in finding that the defendants were guilty of a want of reasonable care under all the circumstances, considerations like these would undoubtedly have, and ought to have, great weight with us. But this court is a court of law. We cannot find facts or infer their existence from other facts found; neither can we review questions of fact in order to ascertain whether they have been correctly determined; but we must take the facts as they come to us from the court below. If the court below erred in giving less weight to certain considerations than it ought to have done, and in consequence found certain facts against the defendants that ought not to have been so found, it is the defendants' misfortune, for there is no redress.

The rule of law that governs in cases of negligence is

simple and easily understood, and can be easily applied. It presents this question of fact in all cases, to be determined by the triers from all the circumstances of the case, did the defendants exercise reasonable care to avoid injury to the plaintiff?

Reasonable care is the criterion by which to determine whether or not a party has been guilty of culpable negligence. Every person is bound to exercise that degree of care to avoid injury to others in all that he does. Can there be any other principle of law that governs this question in the case at bar? We are unable to discover any. If the defendants exercised that degree of care in their conduct with this roller, they performed all that the law required of them; and whether they exercised it or not, is a question of fact.

Suppose the roller had been a much more frightful object to horses than it really was. Suppose the work on Whalley Avenue had been completed for a long time before the injury, but the roller had been left on the street as it was at the time of the accident and had frightened all horses of ordinary gentleness that came upon the avenue, as well as those of a different character, would the principle of law that would govern the case be any different from what it is now? The evidence tending to show negligence in the defendants would perhaps be much stronger than it was on the trial of this cause, but it is manifest that the law would present the same question for determination that is presented here, to wit, did the defendants exercise reasonable care in their conduct with the roller, to avoid injury to others, and among them to the plaintiff?

Again, it is claimed that the defendants are not liable, because the injury to the plaintiff was produced, not by reason of any defect in the road bed itself, not in consequence of her carriage coming in collision with the roller, but in consequence of the horse of the plaintiff becoming frightened at the roller, and running, and thereby doing the mischief of which she complains.

This question was fully decided in the recent case of *Ayer* v. *City of Norwich*, ante, page 376. In that case a large tent was

placed upon one of the public streets of the city of Norwich with the knowledge and approbation of the city authorities, which tent was calculated to frighten horses of ordinary gentleness, and did frighten the plaintiff's horse, which ran from the tent, and brought the plaintiff's carriage in collision with a passing team, whereby she was injured. The same question here made was made in that case by the defendants, and strenuously argued, but the court decided adversely to their claim.

It is difficult to distinguish the principle of that case from the present one in any particular. The two cases seem to be identical so far as the law that governs them is concerned. In both cases there was no defect in the road bed itself that caused the injury. In both cases there was no collision with the object suffered to remain upon the street. In each case the injury to the plaintiff was caused by his horse becoming frightened and running. The tent and the roller were well calculated to frighten horses of ordinary gentleness, and did in these cases frighten them and cause serious injury thereby. The only difference in the two cases seems to be, that in one case the tent was placed upon the street in which to exhibit an object of curiosity for the gratification of the public, and in the other the roller was placed upon the street to be used as a useful machine in macadamizing the avenue. But this difference makes no difference in the principle of law that governs the cases. It follows therefore that if the decision in the case referred to is in accordance with law, so must be the decision in the case we are considering. In both of these cases the streets were rendered defective by the obstructions placed upon them, and we fail to discover that it makes any difference in principle in what manner a defect causes an injury. If the defendants had intentionally left a large boulder upon one of the public streets of the city without guards or lights to inform the public of the dangerous condition of the street, and a traveler had driven his carriage upon the obstruction in the night and received an injury while in the exercise of reasonable care, no one would ques-

tion the liability of the defendants. Can it make any difference in principle whether the boulder caused the injury to the traveler by overturning his carriage, or by frightening his horse so that he ran against some other obstruction. If the boulder was a frightful object to horses of ordinary gentleness, it could cause the injury in both modes, and what reason is there for saying that the defendants would be liable if the injury should be caused in one of the ways suggested, and not liable if caused in the other ? The statute provides that if any person shall receive any injury in his person or property by means of any defective bridge or road, the town, &c. shall be liable. It is silent in regard to the mode by which the defective condition of the road shall have caused the injury, and we think it makes no difference in principle what that mode is.

The defendants further claim that the court erred in allowing the plaintiff to amend her declaration by filing an additional count. The count was filed soon after the suit was brought, and long before the trial of the cause upon its merits, and it does not anywhere appear that the defendants objected to the filing of the same. We think it is too late now to make this objection.

A majority of the court are of the opinion that a new trial ought not to be granted, and so we advise the Superior Court.

In this opinion the other judges concurred ; except CARPENTER, J., who dissented.

CARPENTER, J. The statute on which this action is brought is as follows :—" If any person shall lose a limb, break a bone, or receive any bruise or bodily injury, by means of any defective bridge or road, the town, person, persons, or corporation, *which ought to keep such road or bridge in repair*, shall pay to the person so hurt or wounded, just damages." The defendants being in the discharge of a public duty, their liability is limited by the terms of this statute. It does not make them liable for the negligent use of tools and imple-

Young *v.* City of New Haven.

ments in the hands of their employes, while engaged in repairing a highway. Such negligence would, in some cases, subject the employer upon the principle of *respondeat superior ;* but that principle is not applicable to this case. In order to subject the defendants, two things must concur : 1. The highway must be defective in fact; 2. The defect must be owing to the defendants' neglect to repair. They are not liable therefore for every defect. A street may be in a defective condition during and in consequence of repairs. So too a defect may be the result of a freshet or accident. No one will contend that the city would be ordinarily liable for such defects, unless they were suffered to continue an unreasonable time. There are cases however in which the courts, by a liberal construction of the statute, and for the purpose of compelling towns to keep their highways in a reasonably safe condition, have held that they were liable for neglecting to give timely warning, or take efficient measures to prevent accidents. But such cases are exceptional, and must be considered as extending the statute to its utmost limits. If this is a correct view of the statute, I think this judgment cannot be sustained. The Superior Court has found that the defendants were macadamizing a portion of Whalley Avenue ; that that portion of the street was impassable ; that they used a steam roller, " a machine highly useful ; " that the machine stood upon the impassable part of the street from Saturday forenoon till Monday morning ; that the plaintiff on Sunday was driving along the street on that part which was not being repaired, when his horse was frightened at the machine, which was an object of terror to horses, and she was injured. It is not found that the way on which she was driving was defective ; that the defendants neglected to repair any defects ; that the method of repairing or the means employed were unreasonable ; that there was any unreasonable delay, or that there was any want of caution or notice to the plaintiff that there was danger. So far the fair import of the finding is, that the defendants were repairing the street in a reasonable manner, by the use of suitable and proper means, and without unnecessary delay. If there was

nothing else in the case I apprehend that there would be no claim that the defendants were liable. But the court further found that "the injuries to the plaintiff were caused by negligence and the want of ordinary·care on the part of the defendants." In what that negligence consists does not appear. All the facts from which it is inferred, it must be presumed are stated by the court. It is certainly not an inference of law from these facts; and it is difficult for me to see how it can be inferred as a matter of fact.

But conceding that the court might properly infer negligence from the facts, tnen the question recurs, what was the character of that negligence ? What was the duty which the defendants omitted ? There is no pretense that there was any neglect to repair an ordinary defect; nor is there any claim that there was. any want of notice to the plaintiff of the dangerous condition of the street. It may be claimed that it was negligence to permit the steam roller to stand upon the street from Saturday till Monday. But the declaration alleges no such negligence ; therefore there can be no foundation for such a claim, and no recovery based upon that fact. Besides, it is very questionable whether negligence in that particular must not be regarded as the negligence of the agents and employes of the city in the use of the machine. The fact that it was not in actual operation at the time, being Sunday, ought not to be considered an interruption of its use. It is not as though it was left there for an indefinite time as a mere resting place until wanted for use elsewhere ; but it was designed ·for use *there*, and was being in fact used from day to day. I am unable to distinguish negligence in such use from negligence in the use of a cart, or shovel, or any other implement. For such negligence the defendants are not liable. *Jewett* v. *City of New Haven*, 38 Conn., 368.

The only remaining view to take of the finding is, that the court found negligence from the mere fact that the machine was used at all; or in other words, that no use of it was reasonable or proper. To claim that the defendants are liable on this ground, is in effect to claim that this machine, being calculated to frighten horses of ordinary gentleness,

made this street defective, and the neglect of the defendants to remove it was negligence for which they were liable.

I have no disposition to question the doctrine that objects within the limits of a highway, by reason of their tendency to frighten horses, *may* render the highway defective, and subject the town or city to liability; but to say that every such object will have that effect, without regard to its purpose, or the necessity for its use, is carrying the doctrine beyond its appropriate limits, and the result will be mischievous. I think it should be limited to those cases in which individuals have been permitted to obstruct the highway for private purposes, or where the object constituting the obstruction is in itself a useless nuisance. *Morse* v. *Richmond*, 41 Verm., 443, and *Ayer* v. *City of Norwich*, 39 Conn., 376, are examples of the former; and *Dimock* v. *Suffield*, 30 Conn., 129, and *Cook* v. *Charlestown*, 98 Mass., 80, are examples of the latter. But in this case the object causing the fright was of an entirely different character. It was " a machine highly useful." Its use, in this process of constructing or repairing streets, is a great improvement over the old method. To establish or countenance the doctrine that the use of such a machine is *per se* negligence, will prove to be a serious mistake. Neither the language nor the spirit of the statute will justify it. Considerations of public policy, and the spirit of progress and improvement which characterizes the age in which we live, positively forbid it.

If negligence was inherent in the use, then it was the duty of the defendants absolutely to abstain from such use. The very act of using it at all was unlawful. If this be so, the same principle must apply to all other means employed which prove to be dangerous obstructions. For instance, a bridge is suddenly carried away. In reconstructing it it becomes necessary to use a steam pile-driver. Meanwhile a temporary bridge is erected. The pile-driver frightens a horse, and a party is injured. Is it so that the town is liable, on the ground that the use of a pile-driver is in itself negligence? Suppose that it frightens a horse on Sunday, or other day when it is not in actual operation. Is the town

liable because it was not removed, at great expense it may be, to a distant place? Suppose again that a person is passing with a spirited horse. Just as he reaches the point nearest the pile-driver, those having charge of it, knowing the disposition of the animal, and maliciously, if you please, suddenly put it in operation. The drop falls and the owner suffers damage. Is the town liable? Is there not a vast difference between such a case, and a case where the town negligently suffers a bridge to remain in an unsafe condition? In the one case the inhabitants of the town are guilty of no negligence. They omitted no duty, but were doing their duty in causing the bridge to be repaired. Their employes unnecessarily and negligently caused an injury. In the other case the town, by neglecting to repair, caused the injury. Is there not also a vast difference in *fact,* and in *principle,* between such a case, and the case of negligently permitting a dead horse to remain upon a crowded thoroughfare? In the one case the town uses appropriate means to discharge a public duty imposed upon it by law. In the other it suffers an offensive and useless object to encumber the way and obstruct its use. One is a defect necessarily caused by the use of reasonable means in making repairs; the other is a defect caused by an unnecessary obstruction, which the town neglects to remove. Nothing seems clearer to me than that the town should be liable in the latter case, and not liable in the former.

I am of the opinion therefore that the facts stated do not warrant the judgment of the Superior Court.

I think this judgment is erroneous in another respect. Negligence, which is the ground of the action, is the omission of some duty imposed by law. It is a rule of pleading in such cases that the declaration must state the facts which raise the duty, and allege the duty and the breach. This rule is especially applicable to this class of actions in which there may be negligence for which the defendants are not liable. The declaration should show to a reasonable certainty that the defendants are guilty of *the* negligence which supports the action. Negligence in other respects is not of the

slightest importance. Apply this test to the facts found by the court. Certain facts are found, and the circumstances in which the parties were placed are stated. The court then, in general terms, concludes by finding negligence. Otherwise the facts stated show no negligence. There is no express finding that the way was defective, that any duty devolved upon the defendants, or that they neglected any duty. It is only by implication that we can say that any defect existed at all; but we cannot even by implication say that whatever defect existed resulted from the want of repairs. On the contrary, as I have attempted to show, the import of the finding is that the defect was an inevitable consequence of repairs. It does not appear therefore that any such duty as the statute contemplates has been omitted. Now compare this finding with the declaration and it will appear that the finding, as far as it goes, sustains the first count, but not the second. A material averment that the highway was defective, in the second count, is not found true. The first count, for the want of that averment, is confessedly insufficient. We come then to this state of things. The declaration contains two counts, the one good, the other bad. The bad count is found true, the good count is not; and thereupon the court rendered judgment for the plaintiff. It seems to me that the error is manifest.