James R. BOYCE, Dominic Coppo, John R. Davis, Robert C. Leschorn, George McCauley, Anthony McHale, David W. O'Flaherty, Michael R. O'Neill and Julius L. Weiner, Plaintiffs,

v.

UNITED STATES of America, et al., Defendants.

No. 79 C 531.

United States District Court, E. D. New York.

Sept. 17, 1981.

Norris, Kozodoy & Krasnoo, Boston, Mass., for plaintiffs; James B. Krasnoo, Boston, Mass., Gillen, Turk & Calliendo, Norman Turk, New York City, of counsel, for plaintiffs.

Edward R. Korman, U. S. Atty., E. D. N. Y., Brooklyn, N. Y., by Reuben S. Koolyk, Asst. U. S. Atty., Brooklyn, N. Y., for defendants.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiffs in this action are nine Deputy United States Marshals who claim entitlement to retroactive promotion and pay in accordance with the terms of a teletype dated June 16, 1972, sent to United States Marshals by a personnel officer of the United States Marshals Service ("USMS"). As discussed more fully below, the terms of promotion as set forth in the teletype were impermissible under applicable law and regulations, and the personnel officer's erroneous authorization to promote plaintiffs more rapidly than would otherwise be possible was not implemented. The action is now before the Court on defendants' motion to dismiss for lack of subject matter jurisdiction. For the reasons which follow, the motion is granted.

In 1971 plaintiffs were appointed as temporary, or "term," Deputy United States Marshals to serve in the President's Anti-Air Piracy Program. Because they were specially appointed without having to attain eligibility through the competitive civil service system, their appointments were not permanent, could be terminated by the government at will, and would, in any event, last no longer than four years.

On June 16, 1972, when it appeared that the Air Piracy Program would be in effect longer than four years, USMS personnel officer Bert Lederer sent a teletype to several Marshals, which is reproduced in the Appendix.

Although the teletype appeared to hold out an assurance that term convertees would reach the GS-7 pay level within 90 days of conversion to career conditional appointments, it still required that such appointments be effected through the regular civil service registers and that the appointees have "sufficient grade points available." It was anticipated that since term appointees had differing levels of seniority and grade eligibility, conversion to career conditional appointments would be to dif-

fering GS levels. It was an apparent attempt to equalize the positions of all term appointees, that the teletype stated that those whose eligibility required their appointment at the GS–4 level would within 90 days be accelerated to GS–7 upon meeting certain conditions.

Prior to their conversion, plaintiffs were term appointees at GS–6, step 2.[1] On December 24, 1972, they were converted to career conditional deputy marshals at GS–4, step 10, the highest level to which they were eligible for conversion at that time. On April 1, 1973, plaintiffs were promoted to GS–5, step 8, and on April 14, 1974, their salaries and benefits were elevated to GS–7, step 3. Finally, on April 27, 1975, they were promoted to GS–9, the highest level authorized for their position, and they have been receiving periodic step increases since then.

Plaintiffs were not advanced to GS–7 90 days after their conversion to career conditional because of the rule embodied in the so-called "Whitten Amendment." 5 U.S.C. § 3101 note. See 5 C.F.R. § 300.600(4). This provision requires that certain government employees—including deputy marshals—must serve at least one year in a given grade level before they may be promoted to the next higher grade level. For employees converted to a career conditional appointment at a lower grade level than that held under a temporary appointment, an exception to the Whitten Amendment permits the convertee to credit the time served at the higher level toward the seniority required for promotion from the lower level. See Federal Personnel Manual ch. 300, § 6–2(d)(1)(b). Accordingly, plaintiffs' time served while term appointees at GS–6 was credited to their career conditional service at GS–4, enabling them to be promoted to GS–5 only four months after their conversion. Thereafter, as related above, they were promoted one grade level each year. Since they had already been given the full benefit of this exception to

the Whitten Amendment, however, they could not be promoted even more rapidly and advanced three levels within only 90 days after conversion. Plaintiffs had the option, but did not exercise it, to decline the conversion and remain term appointees at GS–6.

An additional exception to the Whitten Amendment permits the Civil Service Commission, in its discretion, to order a promotion regardless of the time in grade requirements when requested by the chief officer of a federal agency in order to avoid particular hardships. See C.F.R. § 300.600(4). It does not appear that plaintiffs ever petitioned the Attorney General to request the Civil Service Commission to exercise its discretion to waive the Whitten Amendment. Nor does it appear that plaintiffs, on the assumption that their superiors had an obligation, *sua sponte*, to make such a request on their behalf, ever pursued the administrative procedures available for the redress of departmental grievances. Instead, this suit was instituted almost six years after the time plaintiffs assert they should have been converted to GS–7.

Plaintiffs contend that because the teletype sent to their superior appeared to indicate that rapid promotion to GS–7 would be implemented notwithstanding the Whitten Amendment, which they concede would otherwise be applicable, defendants may not now rely on the Amendment's requirements. Accordingly, the complaint demands that the Court order defendants to waive the Amendment's mandates and treat plaintiffs in all respects as if they had been promoted to GS–7 as of March 24, 1973. While defendants respond that the complaint fails to state a claim upon which relief may be granted and that it is barred by a failure to exhaust administrative remedies, as well as by laches and the statute of limitations, their initial defense, with which we agree, is that the Court lacks jurisdiction to entertain plaintiffs' claim.

1. The single exception was plaintiff Leschorn, who at each level was one step behind his fellow deputy marshals.

 It is well settled that the United States as sovereign enjoys immunity from all actions except those as to which it has expressly consented to suit, and that a court's subject matter jurisdiction is narrowly defined by the terms of that consent. See *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *United States v. Sherwood*, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). This immunity extends also to officers of the United States serving in an official capacity. *Estate of Watson v. Blumenthal*, 586 F.2d 925, 929 (2d Cir. 1978); see *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 688, 69 S.Ct. 1457, 1460, 93 L.Ed. 1628 (1949). Plaintiffs assert that federal question jurisdiction supports their claims for denial of due process and equal protection. However, absent an express waiver of sovereign immunity, 28 U.S.C. § 1331 does not provide jurisdiction over actions against the government and its officers that in effect seek disbursement from the Treasury or decrees affecting public administration. *Estate of Watson v. Blumenthal, supra*, 586 F.2d at 932. See *Brown v. General Services Administration*, 425 U.S. 820, 826–27, 96 S.Ct. 1961, 1964–1965, 48 L.Ed.2d 402 (1976); *Gnotta v. United States*, 415 F.2d 1271, 1277 (8th Cir. 1969), *cert. denied*, 397 U.S. 934, 90 S.Ct. 941, 25 L.Ed.2d 115 (1970). Clearly, the complaint seeks such relief.

 It is true that claims implied directly under constitutional guarantees may assert federal question jurisdiction. See *Davis v. Passman*, 442 U.S. 228, 236, 99 S.Ct. 2264, 2272, 60 L.Ed.2d 846 (1979). Such actions, however, which are judicially created, see *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), may be maintained *only* against individuals acting beyond and abusing their official duties, because the sovereign has not consented to be liable in such actions. *Leonhard v. United States*, 633 F.2d 599, 618 n. 27 (2d Cir. 1980). Here, the relief sought plainly demonstrates this action to be against the sovereign. In addi-

tion, plaintiffs have made no allegations of improper personal involvement by any defendant, *id.* 633 F.2d at 621 n. 30, and have even failed to join the personnel officer who dispatched the teletype. Hence, plaintiffs' assertion of jurisdiction for their self-styled "Bivens" action is unavailing.

 Plaintiffs also seek leave to amend the complaint to allege jurisdiction under the Tucker Act, 28 U.S.C. § 1346(a), in order to assert claims based upon the due process and equal protection clauses of the Fifth Amendment and on the doctrine of equitable estoppel.

In *United States v. Testan, supra*, the Supreme Court expressly rejected the argument

> "that the Tucker Act fundamentally waives sovereign immunity with respect to any claim invoking a constitutional provision or a federal statute or regulation." 424 U.S. at 400, 96 S.Ct. at 954.

Rather, the Tucker Act waives immunity only for claims based on constitutional or other theories which "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Id., quoting, Eastport S. S. Corp. v. United States*, 372 F.2d 1002, 1009 (Ct.Cl. 1967); and "the grant of such a right of action must be made with specificity." *Id.*

 The due process clause of the Fifth Amendment by its terms does not imply a right of action for damages against the sovereign, *Duarte v. United States*, 532 F.2d 850, 852 (2d Cir. 1976); and the Court is of opinion that the equal protection clause is similarly devoid of language specifically affording compensation by the United States for alleged violations thereof.[2] Neither constitutional provision can be said to resemble "the language, purpose, and self-executing aspects" of the just compensation clause of the Fifth Amendment, for example, which expressly mandates monetary redress for the taking of private property. *United States v. Testan, supra*, 424 U.S. at 401, 96 S.Ct. at 954. See *McCul-*

---

**2.** As stated above, any implied causes of action based on these constitutional provisions supply claims against individuals only, not against the sovereign or its servants.

loch Gas Processing v. Canadian Hidrogas Resources, Ltd., 577 F.2d 712, 717 (Em. App.), cert. denied, 439 U.S. 831, 99 S.Ct. 109, 58 L.Ed.2d 126 (1978). Since it is clear federal employees do not enjoy a constitutionally protected right to promotion, see Crowley v. United States, 527 F.2d 1176, 1184 (Ct.Cl.1975); Ganse v. United States, 376 F.2d 900, 902 (Ct.Cl.1967); see also Gnotta v. United States, 415 F.2d 1271, 1276 (8th Cir. 1969), cert. denied, 397 U.S. 934, 90 S.Ct. 941, 25 L.Ed.2d 115 (1970), we cannot see how the generalized provisions of the Fifth Amendment could specifically mandate compensation by the government and thereby permit the exercise of jurisdiction under the Tucker Act.

■ Plaintiffs would also assert Tucker Act jurisdiction to support their claim against the government based on an equitable estoppel theory. They contend that the circumstance of the teletype gave rise to a contract implied in law. It is settled, however, that Tucker Act

> "jurisdiction with respect to contracts extends only to actual contracts, either express or implied-in-fact; it does not reach claims on contracts implied in law. [Citation omitted.]" Hatzlachh Supply Co., Inc. v. United States, 444 U.S. 460, 465 n. 5, 100 S.Ct. 647, 650 n. 5, 62 L.Ed.2d 614 (1980).

■ Even if some jurisdictional basis for this claim could be found, the fundamental flaw in plaintiffs' argument—which we believe infects the entire complaint—is that estoppel generally cannot be applied against the government. See Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947).

It remains settled law that

> "estoppel cannot be set up against the Government on the basis of an unauthorized representation or act of an officer or an employee who is without authority in his individual capacity to bind the Government."

Byrne Organization Inc. v. United States, 287 F.2d 582, 587 (Ct.Cl.1961), quoted in Goldberg v. Weinberger, 546 F.2d 477, 480–81 (2d Cir. 1976), cert. denied, 431 U.S. 937, 97 S.Ct. 2648, 53 L.Ed.2d 255 (1977). Indeed, the

> "government could scarcely function if it were bound by its employees' unauthorized representations. Where a party claims entitlement to benefits under federal statutes and lawfully promulgated regulations, that party must satisfy the requirements imposed by Congress. Even detrimental reliance on misinformation obtained from a seemingly authorized government agent will not excuse a failure to qualify for the benefits under the relevant statutes and regulations." Id. (Footnote omitted.)

Here, it is clear that the personnel officer did not have authority to permit plaintiffs' promotion to GS–7 within 90 days of their conversion at GS–4. As demonstrated above, plaintiffs' promotions were restricted by the time in grade requirements of the Whitten Amendment, which could only be waived by the Civil Service Commission. Such a waiver was never sought by plaintiffs. The teletype was sent to United States Marshals—not to plaintiffs—and even if they could prove they relied to their detriment, such reliance would not have been justified because all who deal with the government are presumed to know the law. Federal Crop Ins. Corp. v. Merrill, supra, 332 U.S. at 384–85, 68 S.Ct. at 3–4.

The doctrine of equitable estoppel against the government is particularly inapplicable with respect to claims of federal employees, since it is well established that such persons serve solely by appointment and not by contractual relationship. Crenshaw v. United States, 134 U.S. 99, 104–05, 10 S.Ct. 431, 432–433, 33 L.Ed. 825 (1980); Miles v. United States Postal Service, 561 F.2d 1348, 1349 (9th Cir. 1977). See United States v. Testan, supra, 424 U.S. at 402, 96 S.Ct. at 955 ("The established rule is that one is not entitled to the benefit of a position until he has been duly appointed to it"). See also 5 U.S.C. §§ 2105–2106. Notwithstanding the teletype, the government cannot be estopped from denying the simple fact that plaintiffs were never "duly appointed" with the speed they had anticipated at the level

they now seek retroactively. See *Goutos v. United States*, 552 F.2d 922 (Ct.Cl.1976); *Peters v. United States*, 534 F.2d 232 (Ct.Cl. 1975). We are guided in this conclusion by the rationale underlying the Supreme Court's decision in a related context:

> "The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs." *Bishop v. Wood*, 426 U.S. 341, 349–50, 96 S.Ct. 2074, 2079–2080, 48 L.Ed.2d 684 (1976).

 Plaintiffs' other contentions do not require extended discussion. The mandamus statute, 28 U.S.C. § 1361, is not a general waiver of sovereign immunity and cannot here provide an independent basis for subject matter jurisdiction. *Estate of Watson v. Blumenthal, supra*, 586 F.2d at 935. It is also settled that the Declaratory Judgment Act, 28 U.S.C. § 2201, does not independently grant jurisdiction. *Schilling v. Rogers*, 363 U.S. 666, 677, 80 S.Ct. 1288, 1295, 4 L.Ed.2d 1478 (1960); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 878, 94 L.Ed. 1194 (1950).

 Finally, since this is clearly a case against the sovereign, the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.*, which is not itself a grant of jurisdiction, *Califano v. Sanders*, 430 U.S. 99, 104–07, 97 S.Ct. 980, 983–985, 51 L.Ed.2d 192 (1977), cannot provide jurisdiction in the absence of a consent to suit. *Estate of Watson v. Blumenthal, supra*, 586 F.2d at 935. Even if APA review were available, plaintiffs never petitioned the Attorney General to seek a waiver of the Whitten Amendment, which they concede is necessary before they can be accorded the relief they seek, much less have they exhausted available administrative remedies. Under these circumstances, we would be unable to conclude that the failure to promote them more rapidly or thereafter to award them back pay was "final agency action" that would be ripe for APA review by a district court. 5 U.S.C. § 704.

Accordingly, defendants' motion to dismiss is granted.

SO ORDERED.

The Clerk of the Court is directed to enter judgment dismissing the complaint.

APPENDIX

"TO US MARSHALS CONCERNED

"SUBJECT: CONVERSION OF TERM DEPUTIES TO CAREER CONDITIONAL

"YOUR CURRENT TERM CEILING AUTHORIZATION IS NOW PART OF YOUR FULL TIME PERMANENT AUTHORIZATION. BEGIN PROCESS OF CONVERTING TERM DEPUTIES TO CAREER CONDITIONAL APPOINTMENTS THROUGH CIVIL SERVICE REGISTERS. SUGGEST YOU MEET WITH LOCAL AREA OFFICE OF CSC AND ENLIST ADVICE AND GUIDANCE. REQUEST PERMISSION FROM CSC TO USE NAME REQUEST AND SELECTIVE FACTOR OF THE 'EXPERIENCE IN SURVEILLANCE OF AIRLINE PASSENGER AND OTHER FACETS OF THE ANTI AIR PIRACY PROGRAM,' OR SOMETHING SIMILAR. BE SURE TO EXPLAIN THAT YOU ARE NOT RECRUITING FOR VACANCIES. UTILIZE DUSM EXAM FOR CONVERSION AT GS–6 AND JUNIOR FEDERAL ASSISTANT EXAM FOR CONVERSION AT GS–4 TERMS CONVERTED AT GS–4 WILL RECEIVE HIGHEST PREVIOUS RATE. THAT IS THEY WILL BE PLACED IN A HIGHER STEP AT GS–4 AND WILL NOT LOSE ANY MONEY. IN EITHER CASE TERMS WILL BE PROMOTED TO GS–7 AFTER 90 DAYS FROM CONVERSION PROVIDED:

"1. YOU SUBMIT REQUEST IN COMPLIANCE WITH DIRECTOR'S MAY 4, 1972 MEMORANDUM AND THE JUNE 1, 1972 TWX ON CAREER PROMOTIONS;

"2. HE HAS AT LEAST ONE YEAR OF SERVICE AT GS–6; AND

"3. THERE ARE SUFFICIENT GRADE POINTS AVAILABLE.

"PLEASE PROCEED AS RAPIDLY AS POSSIBLE BUT DO NOT BEGIN CONVERSION PROCESS ON ANY TERM THAT IS LESS THAN HIGHLY SATISFACTORY. PASS A COPY OF THIS TWX TO ALL TERM DEPUTIES SO THEY KNOW WE REALLY DO CARE. ADDRESS ANY QUESTIONS DIRECTLY TO ME BY TWX."