[No. 49165-8. En Banc. May 26, 1983.]

ROBERT PAULSON, ET AL, *Respondents,* v. THE COUNTY OF PIERCE, *Appellant,* JOHN MELVIN, ET AL, *Respondents.*

*Karen L. Strombom, F. Ross Burgess,* and *Burgess, Kennedy & Fitzer, P.S.,* for appellant.

*James F. Leggett,* for respondents Paulson, et al.

*Burton C. Waldo, Keller, Rohrback, Waldo, Hiscock, Butterworth & Fardal, James E. O'Hern,* and *Gordon, Thomas, Honeywell, Malanca, Peterson & O'Hern,* for respondents Melvin, et al.

DOLLIVER, J.—The Nisqually River is one of 10 major river systems in the Puget Sound area. The Nisqually River basin encompasses a drainage area of approximately 712 square miles in Pierce, Thurston, and Lewis Counties. The eastern portion of the basin is rugged and irregular and reaches an elevation of 14,408 feet at the summit of Mount Rainier. From the town of LaGrande west to Puget Sound, the basin is generally below 1,000 feet elevation and is characterized by rolling foothills broken by occasional gravelly prairies and shallow lakes. Most of the basin is heavily forested.

The Nisqually River floodplain covers approximately 9,000 acres. The narrow floodplain above Alder Reservoir suffers frequent flooding. The steep gradient of the river results in high velocity flows that carry large quantities of gravel, logs, and other debris. During high flows, heavy deposits of bed load and debris fill the channel and force the river to spread over the valley floor. *See generally* Puget Sound Task Force—Pacific Northwest River Basins Comm'n, *Comprehensive Study of Water and Related Land Resources, Puget Sound and Adjacent Waters,* app. 12, at 2–1, 10–1 through 10–17 (1970).

In 1961 Pierce County constructed a dike 3,300 feet long on the north side of the Nisqually River just outside the border of Mount Rainier National Park. The dike was extended by the County in 1968 and 1971. The County has continued to maintain the dike, inspecting it periodically and, when necessary, adding rock and riprap to its face.

Plaintiffs are Pierce County residents who own cabins behind the Nisqually River dike in a subdivision known as Nisqually Park. Nisqually Park was platted on property homesteaded by the parents of Margaret Fullinwider and E. Stanley Hall. Plaintiffs purchased the lots on which their cabins were built from defendants Melvin, Hall, and Fullinwider, doing business as Recreation Properties (hereinafter defendants Melvin, Hall, and Fullinwider will be referred to collectively as Recreation Properties).

On December 2, 1977, due to flooding caused by record

rainfall and the melting of the Nisqually Glacier on Mount Rainier, a portion of the Nisqually River dike was breached by the river. The floodwaters caused extensive damage to plaintiffs' cabins along the river.

On June 9, 1978, plaintiffs filed this action against Pierce County and against Recreation Properties. Plaintiffs' motion to certify as a class action was denied and defendants' motion to dismiss suit as a class action was granted. The Pierce County Superior Court bifurcated the issues of liability and damages for trial.

A jury trial on the issue of liability began on November 7, 1979, and concluded on December 27, 1979. At the conclusion of plaintiffs' case the trial court dismissed the action against defendant Recreation Properties. The jury found for the plaintiffs against Pierce County, and the Superior Court entered a judgment on January 18, 1980. Subsequently, a jury trial was held on the issue of damages; the judgment was entered on October 17, 1980.

Defendant Pierce County seeks review of judgments rendered against it in a Pierce County Superior Court trial bifurcated on the issues of liability and damages. Division Two of the Court of Appeals certified the case to the Supreme Court for direct review. *See* RCW 2.06.030(d). We accepted certification to consider the following question:

> Whether RCW 86.12.037, which grants statutory immunity to counties for noncontractual acts and omissions relating to flood protection, was impliedly repealed by RCW 4.92.090 and by RCW 4.96.010, which abrogate common law statutory immunity.

We hold RCW 86.12.037 was not impliedly repealed by RCW 4.92.090 and 4.96.010. Furthermore, we hold RCW 86.12.037 does not violate the equal protection clauses of U.S. Const. amend. 14 and Const. art. 1, § 12. We reverse the trial court's rulings and vacate the judgments rendered against defendant Pierce County.

RCW 86.12.020 authorizes counties to construct and maintain dikes, levees, and other improvements to protect against floods. RCW 86.12.037 declares:

> No action shall be brought . . . against any county . . . for any noncontractual acts or omissions . . . relating to the improvement, protection, regulation and control for flood prevention and navigation purposes of any river or its tributaries and the beds, banks and waters thereof . . .

RCW 86.12.037 was enacted by the Legislature in 1921 to shield counties from liability for their efforts to protect the public from flood damage. *See Short v. Pierce Cy.*, 194 Wash. 421, 430–31, 78 P.2d 610 (1938). RCW 86.12.037 provides immunity to counties even where their negligence in the construction and maintenance of flood control devices results in damage to private property during floods or other periods of high water. *Short,* 194 Wash. at 431.

While it is clear there has been no explicit repeal, plaintiffs contend RCW 86.12.037 was impliedly repealed by RCW 4.92.090 and RCW 4.96.010. RCW 4.92.090 reads as follows:

> The state of Washington, whether acting in its governmental or proprietary capacity, shall be liable for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation.

RCW 4.92.090 applies to political subdivisions of the State, whose sovereign immunity is derived from the State's sovereign immunity. *Kelso v. Tacoma,* 63 Wn.2d 913, 916, 390 P.2d 2 (1964). Likewise, RCW 4.96.010 declares:

> All political subdivisions, municipal corporations, and quasi municipal corporations of the state, whether acting in a governmental or proprietary capacity, shall be liable for damages arising out of their tortious conduct . . . to the same extent as if they were a private person or corporation . . .

 Implied repeals of statutes are disfavored by Washington courts. *E.g., U.S. Oil & Ref. Co. v. Department of Ecology,* 96 Wn.2d 85, 88, 633 P.2d 1329 (1981); *Jenkins v. State,* 85 Wn.2d 883, 886, 540 P.2d 1363 (1975); *Tardiff v. Shoreline Sch. Dist.,* 68 Wn.2d 164, 166, 411 P.2d 889 (1966). Ordinarily, a general statute does not repeal an earlier special statute by implication. *U.S. Oil & Ref. Co. v.*

*Department of Ecology, supra; Herrett Trucking Co. v. Washington Pub. Serv. Comm'n,* 58 Wn.2d 542, 543, 364 P.2d 505 (1961). An implied repeal will only be found where:

> (1) the later act covers the entire subject matter of the earlier legislation, is complete in itself, and is evidently intended to supersede prior legislation on the subject; or (2) the two acts are so clearly inconsistent with, and repugnant to, each other that they cannot be reconciled and both given effect by a fair and reasonable construction.

*In re Chi–Dooh Li,* 79 Wn.2d 561, 563, 488 P.2d 259 (1971), *quoted in U.S. Oil & Ref. Co. v. Department of Ecology, supra* at 88.

When determining the intent of a legislative enactment, the meaning of a plain and unambiguous statute must be derived from the wording of the statute itself. *In re Lehman,* 93 Wn.2d 25, 27, 604 P.2d 948 (1980); *Garrison v. State Nursing Bd.,* 87 Wn.2d 195, 550 P.2d 7 (1976). Where a statute is ambiguous, however, or where the language is unclear, we may resort to extrinsic aids such as legislative history to discern legislative intent. *State v. Grays Harbor Cy.,* 98 Wn.2d 606, 607, 656 P.2d 1084 (1983); *Whitehead v. Department of Social & Health Servs.,* 92 Wn.2d 265, 268, 595 P.2d 926 (1979). We believe there has been no implied repeal of RCW 86.12.037 under the test in *In re Chi–Dooh Li, supra.* Even assuming, however, there is some statutory ambiguity, we believe the lack of legislative intent to repeal RCW 86.12.037 is confirmed by examination of the legislative history of the statutes.

In 1961 the common law doctrine of sovereign immunity was abrogated by the Legislature. Laws of 1961, ch. 136, § 1, p. 1680; RCW 4.92.090. In 1964, in *Kelso v. Tacoma, supra,* we held RCW 4.92.090 applies to all political subdivisions of the State. *See Kelso,* 63 Wn.2d at 916–17. On a subsequent occasion, however, the court ruled RCW 4.92-.090 did not impliedly repeal specific statutory limitations on the liability of a subdivision of the State for tortious

conduct. *E.g., Tardiff v. Shoreline Sch. Dist.,* 68 Wn.2d 164, 167, 411 P.2d 889 (1966).

As a response, the Legislature in 1967 explicitly abrogated the doctrine of sovereign immunity as it relates to political subdivisions of the State. Laws of 1967, ch. 164, § 1, p. 792, codified in RCW 4.96.010. Moreover, the Legislature repealed former RCW 28.58.030, successfully asserted by defendant in *Tardiff* as the basis for its sovereign immunity. Laws of 1967, ch. 164, § 16, p. 804. *See Tardiff,* 68 Wn.2d at 167, 169. Even so, soon after passage of Laws of 1967, ch. 164, § 1, p. 792, we again ruled RCW 4.92.090 did not repeal a specific statutory immunity. *Chappel v. Franklin Pierce Sch. Dist. 402,* 71 Wn.2d 17, 21, 426 P.2d 471 (1967).

In the present case, in light of *Chappel* and *Tardiff* and legislative history, the Superior Court incorrectly determined RCW 86.12.037 was impliedly repealed by RCW 4.92.090. RCW 4.96.010 provides even less support for plaintiffs' argument and the Superior Court decision. Laws of 1967, ch. 164, § 16, p. 804 contained a list of statutes repealed by the measure. While implied repeals of statutes are disfavored by Washington courts, the disinclination to repeal by implication is especially acute when, as here, a later act contains a schedule of statutes repealed and the schedule does not include the statute under consideration. *Washington State Welfare Rights Org. v. State,* 82 Wn.2d 437, 439, 511 P.2d 990 (1973). *Accord, State ex rel. Spokane v. DeGraff,* 143 Wash. 326, 331, 255 P. 371 (1927) (principle of implied repeal inapplicable where an act contains schedule of acts repealed). *See* 1A C. Sands, *Statutory Construction* § 23.11 (4th ed. 1972). We hold RCW 86.12.037 was not impliedly repealed by RCW 4.92.090 or RCW 4.96.010.

In claiming an equal protection violation, plaintiffs note that in *Sado v. Spokane,* 22 Wn. App. 298, 588 P.2d 1231 (1979) the Court of Appeals held the City of Spokane liable under RCW 4.96.010 for its negligence in the construction and maintenance of a flood control embankment. Plaintiffs

argue that, assuming the court finds that RCW 86.12.037 was not repealed by RCW 4.92.090 or RCW 4.96.010, the grant of sovereign immunity for counties but not for municipal corporations violates the equal protection clauses of the Washington and United States Constitutions.

As authority for this proposition, plaintiffs cite *Flax v. Kansas Turnpike Auth.,* 226 Kan. 1, 596 P.2d 446 (1979). In *Flax* the Kansas Supreme Court ruled the governmental immunity statute disallowing tort actions against the Kansas Turnpike Authority violated the equal protection clause since cities and counties in the state did not enjoy the same immunity. *Flax,* 226 Kan. at 7–8.

■ At the outset of any equal protection analysis, we must identify the appropriate standard of judicial scrutiny. If a statute creates an inherently suspect classification such as one based on race, nationality, or alienage, the statute, when challenged, will be subjected to strict scrutiny. *Graham v. Richardson,* 403 U.S. 365, 29 L. Ed. 2d 534, 91 S. Ct. 1848 (1971); *Nielsen v. Washington State Bar Ass'n,* 90 Wn.2d 818, 820, 585 P.2d 1191 (1978). A statute which does not affect fundamental rights or create a suspect classification, however, is generally subjected to minimal judicial scrutiny and will not be invalidated unless it rests on grounds wholly irrelevant to the achievement of a legitimate state objective. *McGowan v. Maryland,* 366 U.S. 420, 425–26, 6 L. Ed. 2d 393, 81 S. Ct. 1101 (1961); *Nielsen v. Washington State Bar Ass'n, supra.*

Certainly the classification of persons barred from recovery under RCW 86.12.037 is not based on race, nationality, alienage, or any other inherently suspect classification. Likewise, RCW 86.12.037 does not affect fundamental rights. The statute does not prohibit recovery under U.S. Const. amends. 5 or 14 or Const. art. 1, § 16 where a person's property is taken for a public purpose by a county in the exercise of its police powers. *Short v. Pierce Cy.,* 194 Wash. 421, 435–36, 78 P.2d 610 (1938). *See Conger v. Pierce Cy.,* 116 Wash. 27, 35, 198 P. 377, 18 A.L.R. 393 (1921). Federal courts consistently have held the federal

constitution does not imply a right of action for damages against the government. *E.g., Duarte v. United States,* 532 F.2d 850, 852 (2d Cir. 1976); *Boyce v. United States,* 523 F. Supp. 1012, 1016 (E.D.N.Y. 1981).

Given the foregoing analysis, RCW 86.12.037 need only meet the minimum scrutiny test to pass constitutional muster. Under the minimum scrutiny approach, the reviewing court must determine (1) whether the legislation applies alike to all members within the designated class; (2) whether there are reasonable grounds to distinguish between those within and those without the class; and (3) whether the classification has a rational relationship to the purpose of the legislation. *Yakima Cy. Deputy Sheriff's Ass'n v. Board of Comm'rs,* 92 Wn.2d 831, 835–36, 601 P.2d 936 (1979). Under the minimum scrutiny analysis, a challenged statute is presumed constitutional and the party challenging it has a heavy burden of showing there is no reasonable basis for the classification or that the classification is contrary to the purpose of the legislation. *Deputy Sheriff's Ass'n,* 92 Wn.2d at 836.

▮ In the present case, we conclude the burden of showing the unconstitutionality of RCW 86.12.037 has not been met. The statute implicitly creates a class of landowners whose property might be damaged as a result of a county's flood control activities. RCW 86.12.037 precludes recovery by all those within the designated class.

Furthermore, there exist reasonable grounds to distinguish between counties and other political subdivisions of the State (*i.e.,* cities and towns). In *Aubertin v. Board of Cy. Comm'rs,* 588 F.2d 781 (10th Cir. 1978), the federal court explained the reasons for granting immunity to a county from liability for negligent maintenance of public works while denying a municipality the same immunity:

> [T]he maintenance of city streets, which are in a relatively confined area, is different from the maintenance of county roads, which sprawl all over the countryside. The difficulties which may be encountered in discovering and correcting defects in the latter could rationally have been

expected to be greater than those which might be encountered in the former.

*Aubertin,* 588 F.2d at 785.

Similarly, the difficulties inherent in constructing and maintaining flood control measures are greater for counties in Washington than for municipalities. For example, there are approximately 54 miles of riverbed in the 100–year floodplain areas of the Nisqually and Puyallup Rivers in Pierce County. In contrast, less than 1 mile of riverbed exists within a 100–year floodplain in an incorporated area in Pierce County. *See* Puget Sound Task Force—Pacific Northwest River Basins Comm'n, *Comprehensive Study of Water and Related Land Resources, Puget Sound and Adjacent Waters,* app. 12, at 9–2, 10–2 (1970).

Finally, there exists a rational relationship between the classification created by RCW 86.12.037 and the purpose of the statute. As previously stated, RCW 86.12.037 was enacted to encourage counties to engage in flood control activities. *See Short v. Pierce Cy., supra.* Shielding counties from liability for undertaking flood control activities prevents the costs of flood damages which will inevitably recur from being added to the cost of constructing the facilities. *See National Mfg. Co. v. United States,* 210 F.2d 263, 270 (8th Cir. 1954).

Both plaintiffs and defendant raise a number of other issues on appeal and cross appeal. Since we rule that RCW 86.12.037 precludes recovery from the County, except for one matter these issues need not be reached. The issue which must be considered is whether the members of Recreation Properties were joint venturers with Pierce County in the location and construction of the dike. We agree with the trial court there was no joint venture and its dismissal of Recreation Properties on the basis of lack of evidence is upheld.

■ The essential elements of a joint venture are (1) a contract, express or implied; (2) a common purpose; (3) a community of interest; (4) an equal right to a voice, accompanied by an equal right to control. *Carboneau v. Peterson,*

1 Wn.2d 347, 374, 95 P.2d 1043 (1939); *Gleason v. Metropolitan Mortgage Co.*, 15 Wn. App. 481, 493, 551 P.2d 147 (1976). An ownership or proprietary interest in the subject matter of the enterprise by all parties is not essential to creation of a joint venture. *Gleason v. Metropolitan Mortgage Co., supra.*

As stated by the trial court:

> I think the claim against [Recreation Properties] on the basis of joint venture has to fail on the basis that there is no showing that the defendants had any control. I think it is quite clear that the County exercised exclusive control over the design, installation, maintenance, everything to do with the dike and the revetment.

25 Report of Proceedings, at 44. We have examined the evidence relied upon by plaintiffs to establish the joint venture and agree with the position of the trial court that Recreation Properties had no control over the diking enterprise of Pierce County.

Reversed.

WILLIAMS, C.J., STAFFORD, UTTER, BRACHTENBACH, DORE, and DIMMICK, JJ., and BEVER and SODERLAND, JJ. Pro Tem., concur.

Reconsideration denied June 30, 1983.