Honorable Lynn Kessler State Representative, 24th District P.O. Box 40600
Dear Representative Kessler:
By letter previously acknowledged, you have requested our opinion on two questions relating to the authority in RCW 67.28 authorizing municipalities to spend lodging tax revenues for tourism-related facilities. I have paraphrased your questions slightly to facilitate a clearer and more complete answer:
 (1) Is a municipality's authority to expend lodging tax revenues limited to tourism-related facilities in which the municipality has an ownership interest?
 (2) May a municipality expend funds for the acquisition or operation of a privately-owned tourism-related facility if the municipality has a joint venture or control over the facility? If yes, how does a municipality determine if there is a joint venture or sufficient control to authorize spending of lodging tax revenues?
To put your questions into perspective, we note the background materials that you provided. First, you provided the annual report by the Municipal Research Services Center of Washington, which states that tourism-related facilities "must be owned and operated by the city, either individually or jointly with another municipality or private party". See Mun. Research Serv. Ctr. of Washington, A Revenue Guide forWashington Cities and Towns 21 (Report No. 46, Aug. 1999). This statement is attributed to advice provided by the Attorney General's Office in 1987, when Mr. Leland Johnson advised the San Juan County Prosecuting Attorney that a municipality could not use lodging tax revenues to provide grants to nonprofit organizations whose purposes might coincide with the purposes of RCW 67.28. See Letter dated October 28, 1987 from Leland T. Johnson, Assistant Attorney General, to The Honorable Frederick C. Canavor, Jr. Mr. Johnson's 1987 advice suggested that, although lodging tax revenues could not be given to a private facility, expenditures would be possible in the context of a joint venture.
In light of this background, we understand your questions to ask about the nature of the interest a municipality must have in a tourism-related facility to spend lodging tax revenues for purposes of acquiring and operating the facility.
 BRIEF ANSWER
The answer to your first question is yes, a municipality must have an ownership interest in a tourism-related facility before it can spend lodging tax revenues on the facility. This requirement reflects the connection between the spending power in RCW 67.28.1815 and a municipality's power to acquire and operate such facilities provided in RCW 67.28.120. A tourism-related facility may consist of real or certain tangible personal property, and we conclude that ownership would include certain leasehold interests.
The answer to your second question is also yes, assuming that the joint venture agreement provides the municipality with a degree of ownership over the facility. Whether there is a joint venture is a question of fact that will be unique to the particular circumstances. Therefore, we identify no particular threshold of ownership or control, so long as the facility is one that the municipality is acquiring and operating jointly pursuant to agreement, thus reflecting the purpose of the lodging tax.
The following analysis explains our answers.
 ANALYSIS I. Background on the Lodging Excise Tax.
The Legislature adopted the first version of the present day lodging excise tax in 1967. See Laws of 1967, ch. 236. The tax and spending authority was codified as RCW 67.28. The original version of the tax supported municipal authority to acquire, finance, construct, and operate sports stadiums. See generally 1967 AGO No. 31. A series of subsequent amendments expanded the permissible uses of lodging tax revenue.
In 1973, the Legislature amended the lodging excise tax as part of authorization to acquire and operate "convention center facilities". Laws of 1973, 2d Ex. Sess., ch. 34, § 1. In 1979, the Legislature expanded the chapter to authorize acquisition and operation of "performing arts center facilities and/or visual art center facilities". Laws of 1979, 1st Ex. Sess., ch. 222, § 1.
The 1997 Legislature significantly amended the statutory scheme by adopting the term "tourism-related facilities" to include stadiums, convention centers, performing and visual arts facilities, and public restrooms allowed by prior versions of the law. It is, however, also a broader term than these previously listed items. The definition statute provides that:
 "Tourism-related facility" means real or tangible personal property with a usable life of three or more years, or constructed with volunteer labor, and used to support tourism, performing arts, or to accommodate tourist activities.
RCW 67.28.080(7).
The provisions of RCW 67.28 are focused on using the lodging tax revenues for acquisition and operation of tourism-related facilities. First, RCW67.28.120 authorizes a municipality to "acquire and operate" such facilities. RCW 67.28.130 authorizes acquisition of such facilities by lease from other municipalities. RCW 67.28.140 authorizes eminent domain in circumstances related to acquiring and constructing facilities. RCW67.28.170 authorizes any municipality "owning or operating tourism-related facilities acquired under this chapter" to contract or lease to others for operation of the facility. The tax itself is authorized by RCW 67.28.180 and RCW 67.28.181.
Thus, the "tourism-related facilities" that are the focus of your question can include a variety of different property, structures, and improvements. For purposes of answering your question, we recognize there will be significant variations on municipal approaches to such facilities, especially in the context of joint ventures and leasing arrangements. Our opinion, however, assumes that the facility meets the statutory criteria for "tourism related facility".
 II. Authority to Spend the Lodging Tax Revenues.
To answer your questions, we turn to the language of the statutes that authorize municipal acquisition and operation of tourism-related facilities and provide authority to spend the lodging excise tax revenues. We start with RCW 67.28.120, which authorizes the municipality to acquire and operate the facilities. That statute provides:
 Any municipality is authorized either individually or jointly with any other municipality, or person, or any combination thereof, to acquire and to operate tourism-related facilities, whether located within or without such municipality.
RCW 67.28.120 (emphasis added). The power to spend lodging tax revenues is provided by RCW 67.28.1815 and uses words that refer directly to this substantive power to acquire and operate:
 All revenue from taxes imposed under this chapter shall be credited to a special fund in the treasury of the municipality imposing such tax and used solely for the purpose of paying all or any part of the cost of tourism promotion, acquisition of tourism-related facilities, or operation of tourism-related facilities. Municipalities may, under chapter 39.34 RCW, agree to the utilization of revenue from taxes imposed under this chapter for the purposes of funding a multijurisdictional tourism-related facility.
RCW 67.28.1815 (emphasis added).
Statutory construction requires that "statutes must be read together to determine legislative purpose to achieve a harmonious total statutory scheme . . . which maintains the integrity of the respective statutes."City of Ellensburg v. State, 118 Wn.2d 709, 713, 826 P.2d 1081 (1992) (quoting Employco Personnel Servs., Inc. v. Seattle, 117 Wn.2d 606,817 P.2d 1373 (1991)). This principle is important to our answer, because the authority to spend for the costs of "acquisition" or "operation" in RCW 67.28.1815 is best interpreted in a manner that harmonizes with the authority in RCW 67.28.120 to "acquire and to operate tourism-related facilities". We turn now to your first question, which we repeat for convenience:
 Is a municipality's authority to expend lodging tax revenues limited to tourism-related facilities in which the municipality has an ownership interest?
We conclude that a municipality must have an ownership interest in a facility in order to spend lodging tax revenues. RCW 67.28.120 provides express authority to "acquire and to operate" tourism-related facilities if a municipality is doing so "individually" or "jointly with any other municipality, or person, or combination thereof". Thus, ownership is always involved. The spending power in RCW 67.28.1815 is designed to serve this power and therefore allows spending for the costs contemplated by RCW 67.28.120.
Our interpretation of the statutory language is supported by the historical purpose of the statutory scheme — to facilitate municipal acquisition of a public stadium and other properties. That original focus on acquisition of public ownership or joint ownership remains, even though municipalities may now acquire an interest in a variety of tourism-related facilities that may be both real and personal property. We note that the definition statute, RCW 67.28.080(1), defines "acquisition" in terms that reflect ownership of the facility as a municipal asset:
 includes, but is not limited to, siting, acquisition, design, construction, refurbishing, expansion, repair, and improvement, including paying or securing the payment of all or any portion of general obligation bonds, leases, revenue bonds, or other obligations issued or incurred for such purpose or purposes under this chapter.
Finally, we construe the definition of "tourism-related facility" in RCW67.28.080 so that a defining characteristic of a tourism-related facility is that it is acquired and operated by a municipality, at least in some part. Property already owned and operated by a private party for tourism purposes cannot be a tourism-related facility for purposes of the lodging tax revenues, because a municipality is not "acquiring and operating" that facility in the manner contemplated by RCW 67.28.120.
This does not mean that the municipality must be acquiring some part of fee title to real property, because the definition of a facility recognizes that a facility is not limited to real property. Instead, "tangible personal property" may be acquired and operated. RCW67.28.080(7). Furthermore, acquisition appears to include lesser interests in real property, such as a lease. See footnote 2, above. Within these relatively broad sideboards, we conclude that the municipality must have an ownership interest before using lodging tax revenues.
We recognize that our opinion necessarily requires that a municipality cannot simply pay for the operations of a private facility, although the private facility may be of great interest to tourists. We note that this approach to the spending power is consistent with the essence of Mr. Johnson's 1987 letter opinion, because it necessarily means that a municipality cannot use the lodging tax revenues to provide grants to private projects that attract tourists.
This leads us to your second question, which concerns expenditures where a municipality is involved in a joint venture or other joint ownership or control. We restate the question here for convenience:
 May a municipality expend funds for the acquisition or operation of a privately-owned tourism-related facility if the municipality has a joint venture or control over the facility? If yes, how does a municipality determine if there is a joint venture or sufficient control to authorize spending of lodging tax revenues?
We conclude that a municipality need not be the sole owner of a tourism-related facility for it to spend lodging tax revenues on the facility, and therefore it may spend lodging tax revenues for a facility that it is jointly acquiring and operating. This opinion is required by the plain language of RCW 67.28.120, which contemplates that a tourism-related facility may be acquired and operated individually or "jointly".
To help explain our analysis and complete our answer, we describe the nature of a municipality's interest in a "joint venture" concerning a tourism-related facility. First, a joint venture is "a relationship voluntarily assumed and arising wholly out of the parties' express or implied contract". Leslie v. Midgate Center, Inc., 72 Wn.2d 977, 980,436 P.2d 201 (1967). Accordingly, it is the intentions of the parties to the joint venture agreement that determine the rights and relationship of the parties to the agreement, "unless the intended relationship is prohibited by some rule of law". Id. at 980.
In addition to the necessary element of a contractual agreement, a joint venture must have "a common purpose", a "community of interest", and "an equal right to a voice, accompanied by an equal right to control".Paulson v. Pierce County, 99 Wn.2d 645, 654, 664 P.2d 1202 (1983). InPaulson, the Supreme Court held that the county and a private residential development did not have a joint venture to construct and locate flood prevention structures on the Nisqually River. Critical to the court's ruling was the fact that the private parties did not have any control over the project. Id. at 655.
It is impossible to describe the variety of situations where a municipality may jointly acquire and operate a tourism-related facility. Accordingly, the critical elements will remain an agreement that describes the purpose and common interests of the municipality and its joint venturers and a description of the mutual control over the facility. We interpret the statutes to leave room for the variety of joint acquisitions and operations that might arise under RCW 67.28.120, which might provide for different contributions to the costs of acquisition and costs of operation over time.
We trust the above will be of assistance.
Very truly yours,
JAY DOUGLAS GECK Senior Counsel