## ALICE BACON *v.* TOWN OF ROCKY HILL.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued January 5—decided February 23, 1940.

*Ernest L. Averill* and *William P. Averill,* with whom, on the brief, was *Henry H. Hunt,* for the appellant (defendant).

*Ralph O. Wells,* with whom was *Warren Maxwell,* for the appellee (plaintiff).

MALTBIE, C. J. The complaint alleges that the plaintiff was a passenger in an automobile operated by Charles Canfield while it was proceeding in a northerly direction upon a highway in the defendant town; that the highway, as it descended steeply from the crest of a hill in a northerly direction, was imminently dangerous and unsafe for the passage of automobiles due to insecure and dangerous paving created and maintained by the defendant town, in that it had dumped and rough-graded heavy trap rock upon the surface of the road near the top and at the foot of the hill; that this caused an inherently and imminently dangerous condition, the natural and inevitable tendency of which was to inflict injury upon persons using it; and that as Canfield operated the car down the hill, due to the dangerous nature of the highway, he lost control of it, with the result that it turned over, causing the injuries to recover for which the plaintiff brought this action. To the complaint the defendant filed a demurrer on the ground that there was no allegation that the plaintiff had given the town the notice which is required by the statute concerning the recovery of damages by a person injured by means of a defective road or bridge. General Statutes, § 1420. The trial court overruled the demurrer, and this ruling is assigned as error. While, at the trial, the same questions presented under the demurrer were again raised by the defendant and overruled, the underlying question of law is fairly presented by the ruling upon the demurrer and may well be considered in connection with it.

Under the allegations of the complaint the plaintiff could prove that the town had created upon the highway a condition constituting a nuisance. The issue of law presented was whether or not a traveler upon a highway who suffers injury by reason of the

creation of a nuisance upon it by a municipality may recover damages, apart from the statutory liability for injuries due to defective roads or bridges. As appears in *Bartram* v. *Sharon*, 71 Conn. 686, 693, 43 Atl. 143, the right to recover damages for injuries due to defective roads or bridges originated in an act passed in 1672, permitting it, under certain limitations, as a penalty for failure on the part of the towns to keep their bridges and highways in repair, where the injury was suffered "through the defect or insufficiency" of a bridge or highway. The word "defect," with its adjective "defective," has continued ever since as the basis in the statute upon which liability rests. General Statutes, § 1420. In some of the earlier decisions the right of recovery under the statute was treated as though it were one in negligence. See, e. g., *Dimock* v. *Suffield*, 30 Conn. 129, 131; *Young* v. *New Haven*, 39 Conn. 435, 439. It is now fully recognized that the right to recover for injuries claimed to be due to defects in highways is strictly statutory, and that the question whether or not the municipality has exercised reasonable care to keep them in a reasonably safe condition is merely the test by which to determine whether they are defective. *Rogers* v. *Meriden*, 109 Conn. 324, 326, 146 Atl. 735; *Porpora* v. *New Haven*, 119 Conn. 476, 479, 177 Atl. 531; *Older* v. *Old Lyme*, 124 Conn. 283, 284, 199 Atl. 434. This test is undoubtedly adequate for most questions which arise, but it has the effect of centering consideration of conditions within the scope of the statute upon those elements which ordinarily are regarded in negligence actions. However, as originally enacted, the statute provided for a recovery not of damages actually suffered, but of double damages, and that continued to be the law until the Revision of 1821. This being the origin and the scope of the law, it is clear that the statute was meant to

cover situations which render a highway defective, whether the conditions would fall within the ordinary field of negligence or within that of nuisance, where the fault of the municipality is in a failure to guard against conditions not created by it.

Several of the earlier decisions dealt with conditions on the highway which constituted or might constitute nuisances, but the liability was determined under the terms of the statute. *Dimock* v. *Suffield*, supra, 134; *Norwich* v. *Breed*, 30 Conn. 535, 549. In *Hewison* v. *New Haven*, 34 Conn. 136, where it was held that a highway was not rendered defective because one of the iron weights at the lower corners of a flag suspended over it by private individuals, became detached and fell upon a traveler, it was said (page 140): "It must be borne in mind that, while every defect in a highway which obstructs, hinders or endangers travelers thereon, is a nuisance, yet it is not every nuisance which obstructs, hinders or endangers travelers upon a highway, that constitutes a defect of the highway within the meaning of this act." In *Ayer* v. *Norwich*, 39 Conn. 376, it was held that a tent within the limits of a highway calculated to frighten horses rendered it defective, the court saying (p. 381): "In conclusion, we are satisfied that the law is, and ought to be so, that objects within the limits of a highway, which in their nature are calculated to frighten horses of ordinary gentleness, may be nuisances which make the highway defective within the meaning of the statute, and which the town or corporation charged with the duty of maintaining the highway is bound to remove." In *Young* v. *New Haven*, supra, where a steam roller had been used by the defendant city in repairing its highways and been left upon one of them, a judgment rendered against the city was sustained, and while that decision was based upon the claimed negligence of the

city, it largely relied upon the decision in *Ayer* v. *Norwich,* supra, the court stating (page 442): "The statute provides that if any person shall receive any injury in his person or property by means of any defective bridge or road, the town, &c. shall be liable. It is silent in regard to the mode by which the defective condition of the road shall have caused the injury, and we think it makes no difference in principle what that mode is." In *Parker* v. *Hartford,* 122 Conn. 500, 190 Atl. 866, which was an action to recover damages suffered by a traveler upon a highway by reason of a gully in it, the second count of the complaint sounded in nuisance and of it we said (p. 504): "Even if the gully constituted a nuisance, it was a situation which was not created by the defendant and the only liability which could attach to it would be its failure to remedy the condition. To that failure governmental immunity would attach if it were not for the liability for a defect in a highway created by the statute. . . . The right to recover damages for injuries due to such conditions is only that given by the statute and in an action founded upon the statute contributory negligence is a defense. The court was in error in charging that there might be a recovery in this case based upon the existence of a nuisance, regardless of any negligence on the part of the plaintiff." In fact in many of the cases dealing with defective roads or bridges, the defect claimed might well have been found to be a nuisance, but no suggestion was made that there was any liability on the part of the municipality except that under the statute. Whenever a condition upon a highway makes it defective, there is a remedy under the statute, and where that condition is not due to any positive act of the municipality but is due to its neglect to take steps to remedy the defect, the statute affords the ex-

clusive remedy, whether or not the defect is or might be found to be a nuisance.

It has been frequently stated in our opinions that the only liability which rests upon a municipality for injuries due to defects in highways is that created by the statute. *Lavigne* v. *New Haven,* 75 Conn. 693, 696, 55 Atl. 569; *Udkin* v. *New Haven,* 80 Conn. 291, 296, 68 Atl. 253; *Dyer* v. *Danbury,* 85 Conn. 128, 81 Atl. 958; *Coletti* v. *Bridgeport,* 103 Conn. 117, 119, 130 Atl. 175; *Riccio* v. *Plainville,* 106 Conn. 61, 63, 136 Atl. 872; *Belhumuer* v. *Bristol,* 121 Conn. 475, 477, 185 Atl. 421; *Roth* v. *MacDonald,* 124 Conn. 461, 463, 200 Atl. 725. In all the cases where this statement has been made, the situations before the court involved conditions in highways which were not created by the municipality, but the court was considering liability based upon the failure of the municipality to remedy the defect. A municipality, while not liable for the negligence of its agents and employees engaged in the exercise of its governmental functions, may be liable for a nuisance which they create. *Hoffman* v. *Bristol,* 113 Conn. 386, 389, 155 Atl. 499. That liability includes a situation where a nuisance is created upon a highway by the positive act of the municipality. The principle is that stated in *Mootry* v. *Danbury,* 45 Conn. 550, 556: "Towns will not be justified in doing an act lawful in itself in such a manner as to create a nuisance, any more than individuals. And if a nuisance is thus created, whereby another suffers damage, towns like individuals are responsible." In *Hinckley* v. *Danbury,* 81 Conn. 241, 70 Atl. 590, where an injury was suffered by reason of a barrier erected by the defendant to protect an excavation it had made in the street, while the action was determined upon the basis of the statute concerning defective highways, the court said (page 242): "It is open to question whether the cause

of action stated in the complaint is one upon the statute rendering municipal corporations liable to travelers injured by a defect in a highway." In *Conway* v. *Waterbury,* 84 Conn. 345, 80 Atl. 83, in a similar situation, where the plaintiff was injured by reason of certain planks used to form a barrier to protect new pavement which the city had laid on one of its streets, we said (page 349): "There is ground for the claim that, independently of that statute, the defendant was liable for the acts of its employees in unnecessarily and carelessly placing a dangerous obstruction in the highway. The negligence in such a case would have consisted not in leaving the roadbed defective in disregard of a statutory duty, but in performing the lawful act of repairing the roadbed in such a manner as to unnecessarily injure another." In *Flynn* v. *West Hartford,* 98 Conn. 83, 118 Atl. 517, where the plaintiff was injured by running into an excavation and a pile of sand and earth in the street made by agents of the town in repairing a catch basin, the defendant was held liable upon this ground (page 85): "Aside from the liability under the statute, the defendant would be liable under the common-law rule for an injury proximately resulting from the presence upon the highway of this pile of sand and earth and excavation, because it was responsible for their existence; it made the excavation, it piled up the sand and earth and it left them inadequately guarded"; and liability was placed upon the ground that it had created a nuisance, as appears from its later citation of *Colwell* v. *Waterbury,* 74 Conn. 568, 573, 51 Atl. 530. In *Capozzi* v. *Waterbury,* 115 Conn. 107, 160 Atl. 435, the plaintiff sought damages based on an injury to his young son who stumbled over a stake placed by the defendant city at or near the inner edge of a sidewalk it was repairing and claimed recovery both on the ground that the highway was

defective under the statute and that the defendant had created a nuisance, and it was held liable upon the latter ground.

It is true that in *Dyer* v. *Danbury,* supra, where the plaintiff was injured by the falling of a branch of a tree overhanging the highway, we said (page 131) that if the branch endangered travel it was a public nuisance which the defendant could, and should, have caused to be removed, but the duty was a public governmental duty for the neglect of which no liability at common law rested upon the city and no statute imposed any; but the case was decided upon the ground that the allegations of the complaint did not charge a duty upon the defendant to remove the branch; the reference was to the duty of the municipality to take steps to abate a public nuisance endangering travelers upon the highway but not constituting a defect therein; *State* v. *Knapp,* 6 Conn. 415, 418; *State* v. *Moore,* 31 Conn. 479, 486; 2 Swift's Digest 349; and for a breach of that duty the defendant might not be liable. *Udkin* v. *New Haven,* supra, 295; see 6 McQuillin, Municipal Corporations, § 2812. In *Rogers* v. *Meriden,* 109 Conn. 324, 146 Atl. 735, the plaintiff claimed recovery under the statute for a defective condition in a highway due to the conditions surrounding a catch basin in the sidewalk; we said (page 327) that if the catch basin was in itself dangerous to the public it was a public nuisance which it was the duty of the defendant to remove, but that this duty was governmental and for its neglect the city would not be liable at common law or under any statute; but this statement was clearly obiter, and, if construed broadly, was made in disregard of the decisions we have cited. See *Hoffman* v. *Bristol,* supra, 392. Under the allegations of the complaint the plaintiff could prove that the defendant had created a condition of the highway amounting to

a nuisance which would render it legally liable for the injuries she claimed to have suffered, apart from any liability under the statute for recovery of damages due to a defective road, and the demurrer was properly overruled.

We do not apprehend the serious consequences from the application of this principle of law which the defendant advances in its brief. The principle is not a new one and such results apparently have not followed previous applications of it. Nor is it too much for the law to demand that a municipality, when it undertakes to repair a highway, should do so in such a manner as not to produce a condition the natural tendency of which is to create danger to and inflict injury upon travelers, under penalty of being held responsible in damages should it fail to do so. It should also be borne in mind that the trial court did not hold broadly that the spreading of fresh stone loosely upon the surface of a highway would constitute a nuisance but that it had that result in this case because of the peculiar conditions of the highway where the work was done.

The finding of the trial court, with such slight changes as should be made in it, states the following facts: The highway in question is a little-used country road about three-quarters of a mile long, running northerly from a street in the defendant town. For some distance it is practically level, then rises steeply for a few feet, then more gradually to the crest of a hill. Just beyond the crest it slopes gradually for twenty-one feet, and then descends very steeply for some distance. At the time of the accident the highway was a fairly good country road as far as the crest of the hill, but as it descended it consisted of two wheel ruts with grass between them; on the west side of the road was a ditch or drain and swampy pasture; and the grass in the road and at either side of it was wet and

slippery. Just beyond the point where the steep descent begins, is an abrupt outcropping of rock, the main part of which is between the wheel tracks and protrudes about five inches. Shortly before the day of the accident a selectman of the defendant town, acting for it, attempted to repair the road with three-quarter inch crushed stone and had spread this stone over a space covering both wheel tracks and extending some ten or fifteen feet between the crest of the hill and the protruding rock. The stone was spread loosely and unevenly on the surface of the road to a depth about three and one-half inches. There was no sign warning approaching operators of cars of any danger and a driver approaching from the south could not see the stone until he was within about thirty feet of it. The placing of the stone upon the highway under these conditions had a natural and decided tendency to create danger to and inflict injury upon a person passing over the road in an automobile proceeding in a northerly direction.

The plaintiff was a passenger in a car being driven by Charles D. Canfield in a northerly direction over the highway. When Canfield came to the top of the hill and saw the stone on the road, he was proceeding at about twenty miles an hour. As he drove over the stone it caused his car to skid from side to side and threw it out of control, with the result that it struck the protruding rock between the wheel tracks. Either the operation of the car through the stone or the striking of the rock bent the steering rod, thus preventing Canfield thereafter from controlling it or keeping it in the wheel tracks. He did not apply his brakes because, as his wheels were on the slippery grass astride the west wheel rut, he was afraid that if he did so the car would skid into the ditch and swamp at his left hand.

The car finally crossed the road near the foot of the hill, and, striking a large rock, overturned.

The trial court concluded that the condition of the highway was inherently and imminently dangerous to drivers of automobiles proceeding over it in a northerly direction and constituted an absolute nuisance, and that neither the plaintiff nor Canfield was guilty of contributory negligence. The conclusion of the trial court that the crushed stone upon the highway, placed as it was, in view of its location and the surrounding circumstances, constituted a nuisance, was one it could reasonably have reached. If the nuisance was properly described as absolute, mere contributory negligence would not be a defense. *Hoffman* v. *Bristol,* supra, 393. If the trial court was in error in so describing it and if Canfield was guilty of contributory negligence, that negligence would not, of course, be imputed to the plaintiff. But these considerations aside, confronted as Canfield was with conditions of great emergency, we cannot say that he was guilty of contributory negligence as matter of law.

There is no error.

In this opinion the other judges concurred.