**Anthony AUBERTIN, Plaintiff-Appellant,**

**v.**

**BOARD OF COUNTY COMMISSIONERS OF WOODSON COUNTY, KANSAS, Defendant-Appellee.**

**No. 77–1358.**

United States Court of Appeals, Tenth Circuit.

Argued Sept. 28, 1978.

Decided Dec. 7, 1978.

Donald E. Shelton, Ann Arbor, Mich. (Forsythe, Campbell, Vanderberg, Clevenger & Bishop, P. C., Ann Arbor, Mich., and James P. Nordström of Fisher, Patterson, Sayler & Smith, Topeka, Kan., on the brief), for plaintiff-appellant.

Jerry W. Hannah, Topeka, Kan. (Hannah & Worden, Topeka, Kan., and Robert W. Manske, Yates Center, Kan., on the brief), for defendant-appellee.

Before McWILLIAMS, McKAY and LOGAN, Circuit Judges.

McWILLIAMS, Circuit Judge.

This is a tort action with jurisdiction based on diversity. Anthony Aubertin, a resident and citizen of the State of Michigan, sustained serious personal injuries

when a truck he was driving struck and knocked over the hand rail on a county bridge in Kansas and plunged into the stream below. The bridge in question was maintained by the Board of County Commissioners of Woodson County. Based on this incident, Aubertin brought suit in the United States District Court for the District of Kansas against the Board of County Commissioners, seeking compensatory and punitive damages.

Aubertin's complaint set forth three claims for relief. Count 1 was based on the so-called "highway defect" statute, K.S.A. § 68–301, which provides, in pertinent part, as follows:

Any person who shall without contributing negligence on his part sustain damage by reason of any defective bridge, culvert, or highway, may recover such damage from the county or township wherein such defective bridge, culvert or highway is located, as hereinafter provided; that is to say, such recovery may be from the county when such damage was caused by a defective bridge, culvert or highway which by law, or agreement entered into pursuant to law, the county is obligated to maintain, and when any member of the board of county commissioners, the county engineer or superintendent of roads and bridges of such county shall have had notice of such defects for at least five days prior to the time when such damage was sustained; and in other cases such recovery may be from the township, where the trustee of such township shall have had like notice of such defect.

Count 2 was based on simple negligence, the allegation being that the county was negligent in its construction and maintenance of the bridge and the road leading onto the bridge.

Count 3 charged the county with gross negligence, recklessness and willful and wanton misconduct in the construction and maintenance of the bridge and road, and asked for punitive damages.

By pre-trial order the trial court held that under Kansas law a county was immune from liability for negligence and on this basis count 2 was stricken from the complaint. In this general regard the trial court held that the only suit which Aubertin could bring against the county was that permitted by K.S.A. § 68–301, the "defect" and "notice" statute set forth above. The trial court additionally held, by pre-trial order, that the absence of a guard rail or advance warning signs did not constitute a violation of any "legislative command," and hence was not, in and of itself, a "defect" within the meaning of K.S.A. § 68–301. Finally, the trial court in its pre-trial order struck count 3 of the complaint, which sought punitive damages, on the ground that K.S.A. § 68–301 only permitted the recovery of compensatory damages, and did not authorize the recovery of punitive damages against a county.

Trial of this case was to a jury, with count 1 being the only matter presented to the jury. A transcript of the testimony given at trial is not a part of the record on appeal. It would appear from the statements of counsel, however, that all of the facts and circumstances surrounding the accident were fully explored, including the absence of a guard rail and advance warning signs. The jury returned a verdict in favor of the county. Aubertin now appeals, and assigns as grounds for reversal the trial court's pre-trial order, alleging that such was erroneous in several particulars. The principal ground urged for reversal is the allegedly erroneous holding by the trial court that the Kansas law granting immunity to a county from liability for negligence was constitutional and not violative of the equal protection clause of the Fourteenth Amendment.

Aubertin's equal protection argument is based on the fact that under Kansas judicial pronouncements a municipality is liable for its negligent construction or maintenance of city streets, whereas under the Kansas statutory scheme a county is not liable for its negligent construction or maintenance of county roads, though it may be held liable under the "defect" and "notice" remedy provided by K.S.A. § 68–301.

Brief background will place this argument in focus.

At one point in time in Kansas a judicially created doctrine of governmental immunity rendered both the state and counties immune from liability for negligence. At the same time judicial precedent made a municipality liable for its negligent construction or maintenance of city streets. See, for example, *Grantham v. City of Topeka*, 196 Kan. 393, 411 P.2d 634 (1966). After indicating in several of its opinions that the doctrine of governmental immunity no longer was viable, the Kansas Supreme Court in *Carroll v. Kittle*, 203 Kan. 841, 457 P.2d 21 (1969) abrogated the doctrine by holding the state and its governmental agencies liable for its negligence when engaged in proprietary functions. The Kansas legislature, which had ignored earlier warnings, promptly thereafter enacted a statute which reestablished for the state and its agencies the doctrine of governmental immunity from liability for negligence, "except as is otherwise specifically provided by statute." K.S.A. § 46–901. Another statutory provision enacted in response to *Carroll* provided that the liability of local governments, including cities and counties, was to remain unchanged. K.S.A. § 46–902.

As above indicated, another statute had for some time provided that a person who without contributing negligence sustained damages by reason of any defective bridge or highway could recover from a county if responsible officials of the county had notice of the defect at least five days prior to the time when such damage was sustained. K.S.A. § 68–301. However, this "defect" and "notice" statute, according to Aubertin, imposes a greater burden on a party than merely proving simple negligence, which brings us to the core of Aubertin's equal protection argument: the Kansas statutory scheme which renders a county immune from liability for its negligence is unconstitutional since a municipality is liable for its negligent construction or maintenance of city streets. In other words, Aubertin argues that to permit an injured party to recover from a municipality for damages sustained by reason of a negligently constructed or maintained city street, and at the same time deny recovery to one injured by reason of a negligently constructed or maintained county roadway is disparate treatment which is constitutionally impermissible.

The Kansas statute granting the state and its agencies immunity from liability for negligence has been considered on several occasions by the Kansas Supreme Court. In *Woods v. Kansas Turnpike Authority*, 205 Kan. 770, 472 P.2d 219, 222 (1970), the Kansas Supreme Court described the statute as "comprehensive . . . on the subject of immunity for the state and its agencies" and declined to overrule the statutory scheme. More recently the Kansas Supreme Court has rejected, on rehearing, an argument quite similar to that advanced by Aubertin in the instant case. *Brown v. Wichita State University*, 217 Kan. 279, 540 P.2d 66 (1975), *rev'd, in part, on rehearing*, 219 Kan. 2, 547 P.2d 1015 (1976), *appeal dismissed for want of jurisdiction, sub nom., Bruce v. Wichita State University*, 429 U.S. 806, 97 S.Ct. 41, 50 L.Ed.2d 67 (1976).

In *Brown* the Kansas statute reestablishing immunity from liability for negligence for the state and its agencies was attacked on the ground that a second section of the statute provided, in effect, that the liability of a city for its negligence should remain unchanged. In other words, the statutes were challenged because they granted, on the one hand, immunity to the state from liability for negligence, and permitted, on the other hand, the liability of a municipality for its negligence to remain unchanged. The argument advanced in *Brown* was about the same as that advanced by Aubertin in the instant case, namely that such disparate treatment violated the equal protection clause of the Fourteenth Amendment and rendered the statute unconstitutional. As indicated, this argument was rejected, and the Kansas Supreme Court in *Brown* upheld the statute reestablishing immunity for the state.

■ In our view the reasoning of the Kansas Supreme Court in *Brown* is persuasive and affords ample basis for rejecting the equal protection argument advanced here by Aubertin. The "different treatment" in the instant case is not as extreme as that in *Brown*. In *Brown*, the state was immune from liability and a municipality was not. In the instant case the county is not completely immune, as by statute one injured on a county road or bridge is afforded a remedy against the county. K.S.A. § 68–301. In any event, the real test is whether the statutory classification has some rational relationship to legitimate state objectives. *United States Dept. of Agriculture v. Moreno*, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973); *Sidle v. Majors*, 536 F.2d 1156 (7th Cir. 1976), *cert. denied*, 429 U.S. 945, 97 S.Ct. 366, 50 L.Ed.2d 316 (1976). The classification with which we are here concerned would appear to have a rational relationship. See *Brown v. Wichita State University*, 219 Kan. 2, 547 P.2d 1015 (1976). Also, in our view, the maintenance of city streets, which are in a relatively confined area, is different from the maintenance of county roads, which sprawl all over the countryside. The difficulties which may be encountered in discovering and correcting defects in the latter could rationally have been expected to be greater than those which might be encountered in the former. In sum, the trial court did not err in holding that the Kansas statutory scheme granting immunity to a county from liability for negligence in the construction and maintenance of a county road is constitutional. Such being the case, count 2 was properly stricken from the complaint.

■ As above mentioned, count 1 was based on K.S.A. § 68–301, which allows a person who is himself free of contributory negligence to recover from a county for damages caused by a defective bridge or highway when a member of the board of county commissioners, the county engineer or superintendent of roads and bridges has notice of such defect at least five days prior to the time such damage was sustained. A "defect" within the meaning of K.S.A.

§ 68–301 may be predicated on: (1) the failure to comply with a specific legislative mandate, or (2) the existence of a condition creating actual peril to persons using the highway with due care. See *Martin v. State Highway Commission*, 213 Kan. 877, 518 P.2d 437 (1974), interpreting almost identical provisions of K.S.A. § 68–419, a defect and notice statute applicable to the Highway Commission. In the instant case the trial judge held in his pre-trial order that the absence of a guard rail and the absence of advance warning signs did not constitute a failure on the part of the county to comply with a specific legislative command. At the same time the trial judge ruled that evidence concerning the absence of guard rails and signs was relevant to the question of whether the bridge itself was "manifestly dangerous" and defective within the meaning of the statute. As we understand it, the case was presented to the jury on that basis. A transcript of testimony given at trial is not a part of the record on appeal. In such circumstances, it is difficult to assess the actual impact of the trial judge's pre-trial order concerning the absence of guard rails and advance warning signs. In any event we are not inclined to overturn the trial judge's determination that the absence of guard rails and signs is not in itself a violation of legislative command. The trial court's ruling would appear to find support in *Martin v. State Highway Commission, supra*. Deference should be accorded the views of a federal district judge in construing a state statute of his resident state, particularly a statute pertaining to such local matters as guard rails on bridges and traffic control signals. *Binkley v. Manufacturers Life Insurance Co.*, 471 F.2d 889 (10th Cir. 1973), *cert. denied* 414 U.S. 877, 94 S.Ct. 130, 38 L.Ed.2d 122 (1973).

■ Our resolution of the foregoing matters has in our view mooted the question of punitive damages. The trial court in its pre-trial order struck from the complaint count 3, which sought punitive damages. Aubertin asserts here that even if the trial court was correct in its holding regarding

governmental immunity, he nonetheless should have been allowed to have his claim for punitive damages submitted to the jury under count 1 in his complaint. We agree with the trial court that K.S.A. § 68–301 would appear to authorize the recovery of compensatory damages only. See *Snyder v. Board of Commissioners of Pottawatomie County,* 120 Kan. 659, 245 P. 162, 164 (1926). In any event, it is clear that punitive damages may not be recovered where no actual damages are found. *Adams v. Salina,* 58 Kan. 246, 48 P. 918, 919 (1887). The jury in the instant case has by its verdict now determined that there should be no recovery under K.S.A. § 68–301 for even compensatory damages. It is on this basis that we say the claim for punitive damages is now moot.

Judgment affirmed.