JENNIE M. RYSZKIEWICZ *v.* CITY OF NEW BRITAIN
(11134)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and SHEA, Js.

Argued February 28—decision released July 10, 1984

*Dennis L. Kern,* with whom was *James F. Kane,* for the appellant (plaintiff).

*Edward T. Lynch, Jr.,* corporation counsel, with whom were *Seth Feigenbaum,* assistant city attorney, and on the brief, *Anita D. Cobb,* assistant corporation counsel, for the appellee (defendant).

SPEZIALE, C. J. The dispositive issue in this appeal concerns the constitutionality of a special act of the Connecticut General Assembly. That special act, adopting the charter of the city of New Britain, inter alia, limits the city's liability for damages caused by ice or snow on the city's highways to $1000. We hold that that limitation violates the equal protection guarantees of the United States and Connecticut constitutions.

The case was tried to a jury, who could reasonably have found the following facts: On the morning of December 13, 1977, the plaintiff, Jennie M. Ryszkiewicz, was walking on a sidewalk abutting Washington Street in New Britain. Because of an accumulation of ice or snow on the sidewalk, the plaintiff fell and suffered physical injury.

The plaintiff filed suit against the defendant city of New Britain on March 15, 1978, alleging that as a municipal corporation it was charged by state law with the duty properly to care for and maintain all sidewalks within its confines. The plaintiff alleged that the city had breached this duty on December 13, 1977, and that its breach proximately caused the plaintiff's fall and resulting injuries.

In its answer the defendant raised a special defense. It claimed that pursuant to § 2709 of the New Britain city charter, as adopted by the General Assembly in 30 Spec. Acts 404, No. 420 § 2709 (1961)[1] (hereinafter § 2709), in any action for injuries caused by ice or snow on highways within the city, the city's liability for damages could not exceed $1000.

The plaintiff responded by denying the validity of the special defense. She claimed that the limitation on the defendant's liability violated her right to equal protection of the law and due process of law as guaranteed by the fourteenth amendment to the United States constitution and article first, § 20 of the Connecticut constitution. The plaintiff also filed a motion to strike the special defense on the same grounds. The trial court denied the motion.

---

[1] 30 Spec. Acts 404, No. 420 § 2709 (1961) provides: "LIMITATION OF LIA-BILITY. In any action for injuries to persons or property caused by defects consisting of ice or snow, or both, in the highways of said city damages recoverable from said city shall not exceed the sum of $1,000."

This section of the charter of the city of New Britain was first adopted in 1929. 20 Spec. Acts 1107, No. 487 § 6 (1929).

At trial the plaintiff testified about the damages she sustained as a result of injuries suffered from the fall. As part of the damages she sustained, the plaintiff testified that she incurred medical expenses for treatment of her injuries. The bills introduced as evidence of treatment costs totaled more than $2000.

After both parties presented their evidence and counsel made closing arguments, the trial court instructed the jury. On the issue of damages the court instructed the jury that they could not award damages in excess of the $1000 limit set by § 2709: "If you find that the city was liable in accordance with all of the requirements that I've set forth, you must come in with a verdict of $1000. You can't come in with a higher verdict. There's no doubt that a higher verdict would be brought I think, because the specials [medical treatment costs] alone are over $2000 . . . . [I]f you find liability, you must come in with a thousand dollars." The plaintiff properly excepted to the trial court's charge concerning the limitation on damages, again claiming that the limitation was unconstitutional. The jury returned a verdict for the plaintiff in the amount of $1000 and judgment was rendered accordingly.

On appeal the plaintiff claims, inter alia,[2] that § 2709 violates constitutional guarantees of equal protection and that therefore it was error to limit the damage award in this case to $1000.[3] We agree.

---

[2] The plaintiff's other claims on appeal are:

"Whether Section 2709 of the Charter of the City of New Britain can be construed to mean that a reasonable level of damages may be allowed to the claimant?

"Whether Section 2709 of the Charter of the City of New Britain violates the Due Process Clause of the Constitution of the United States?

"Whether the Plaintiff should have been allowed to amend the complaint in order to seek a declaratory judgment as to the constitutionality of Charter Section 2709?"

Our holding on the equal protection claim makes it unnecessary to address these claims.

[3] On appeal the defendant argues that we should not consider the plain-

At common law, Connecticut municipalities enjoy governmental immunity, in certain circumstances, from liability for their tortious acts. See *Murphy* v. *Ives,* 151 Conn. 259, 264, 196 A.2d 596 (1963); *Warren* v. *Bridgeport,* 129 Conn. 355, 358, 28 A.2d 1 (1942); *Bacon* v. *Rocky Hill,* 126 Conn. 402, 406, 11 A.2d 399 (1940); *Hoffman* v. *Bristol,* 113 Conn. 386, 389, 155 A. 499 (1931); *Pope* v. *New Haven,* 91 Conn. 79, 80, 99 A. 51 (1916); see also McQuillin, *Municipal Corporations* (3d Ed. Rev. 1977) § 53.02. As regards liability for defective conditions in public roadways, "a common-law action lies against a municipality if the action is predicated on a condition in a highway which the municipality was bound to maintain and that condition amounted to a nuisance and was created by the positive act of the municipality. *Monick* v. *Greenwich,* 144 Conn. 608, 611, 136 A.2d 501 [1957]; *DeLahunta* v. *Waterbury,* 134 Conn. 630, 633, 59 A.2d 800 [1948]; *Bacon* v. *Rocky Hill,* supra." *Murphy* v. *Ives,* supra.

We need not decide, however, whether the defect involved in this case falls within the exception to governmental immunity outlined in *Murphy* v. *Ives.* The state legislature possesses the authority to abrogate any governmental immunity that the common law gives to municipalities. Cf. *Shore* v. *Stonington,* 187 Conn. 147, 444 A.2d 1379 (1982); *Comba* v. *Ridgefield,* 177 Conn. 268, 413 A.2d 859 (1979); *Martyn* v. *Donlin,* 151 Conn. 402, 198 A.2d 700 (1964); see McQuillin, supra. As regards defective roadways, the legislature has done

tiff's equal protection claim because the trial court never directly addressed the claim. The record reveals that the plaintiff raised her equal protection claim: in replying to the defendant's special defense of limited liability, in moving to strike the special defense, in objecting to the defendant's reference to the limitation during its opening statement and again during closing argument, and in taking exception to the trial court's instruction to the jury that it could not award more than $1000 in damages. We conclude from this record that the trial court rejected the plaintiff's constitutional challenge to § 2709.

precisely that. General Statutes § 13a-149[4] provides that "[a]ny person injured in person or property by means of a defective road or bridge may recover damages from the party bound to keep it in repair." The statute does not impose any limit on the amount of damages that may be recovered.

It was the defendant's duty to keep in good repair that portion of the sidewalk on which the plaintiff fell. General Statutes § 13a-99;[5] see *Moleske* v. *MacDonald,* 109 Conn. 336, 341, 146 A. 820 (1929). Thus, if § 13a-149 controlled on the question of damages, no limitation on a jury's award could be imposed, provided such award was reasonable. See, e.g., *Wochek* v. *Foley,* 193 Conn. 582, 477 A.2d 1015 (1984).

---

[4] General Statutes § 13a-149 provides: "DAMAGES FOR INJURIES BY MEANS OF DEFECTIVE ROADS AND BRIDGES. Any person injured in person or property by means of a defective road or bridge may recover damages from the party bound to keep it in repair. No action for any such injury sustained on or after October 1, 1982, shall be brought except within two years from the date of such injury. No action for any such injury shall be maintained against any town, city, corporation or borough, unless written notice of such injury and a general description of the same, and of the cause thereof and of the time and place of its occurrence, shall, within ninety days thereafter be given to a selectman or the clerk of such town, or to the clerk of such city or borough, or to the secretary or treasurer of such corporation, unless the action is commenced by complaint setting forth the injury and a general description of the same and of the cause thereof and of the time and place of its occurrence, within the time limited for the giving of such notice. If the injury has been caused by a structure legally placed on such road by a railroad company, it, and not the party bound to keep the road in repair, shall be liable therefor. No notice given under the provisions of this section shall be held invalid or insufficient by reason of an inaccuracy in describing the injury or in stating the time, place or cause of its occurrence, if it appears that there was no intention to mislead or that such town, city, corporation or borough was not in fact misled thereby."

[5] General Statutes § 13a-99 provides: "Towns shall, within their respective limits, build and repair all necessary highways and bridges, and all highways to ferries as far as the low water mark of the waters over which the ferries pass, except when such duty belongs to some particular person. Any town, at its annual meeting, may provide for the repair of its highways for periods not exceeding five years and, if any town fails to so provide at such meeting, the selectmen may provide for such repairs for a period not exceeding one year."

In this instance, however, the abolition of municipal immunity contained in § 13a-149 was superseded for the city of New Britain by § 2709. "As this court has previously noted, '[t]he city of New Britain operates under a special charter granted by the General Assembly in 1961. 30 Spec. Acts 404, No. 420.' *First Church of Christ, Scientist v. Friendly Ice Cream,* 161 Conn. 223, 225, 286 A.2d 320 [1971]." *Grogan v. New Britain,* 175 Conn. 174, 179, 397 A.2d 97 (1978). As set forth above, § 2709 specifically limits to $1000 the city's liability for damages from injuries caused by snow or ice on the city's highways. Because the special act limiting the city's liability was adopted after the legislature had abolished municipal immunity from such causes of action in general; General Statutes § 13a-149; and because it specifically limits the otherwise unlimited liability imposed by § 13a-149, § 2709 of the special act is the controlling statute in this case. *Norwalk Vault Co. of Bridgeport, Inc. v. Mountain Grove Cemetery Assn.,* 180 Conn. 680, 691, 433 A.2d 979 (1980); *Budkofsky v. Commissioner of Motor Vehicles,* 177 Conn. 588, 592, 419 A.2d 333 (1979); *New Haven Water Co. v. North Branford,* 174 Conn. 556, 565, 392 A.2d 456 (1978); *Charlton Press, Inc. v. Sullivan,* 153 Conn. 103, 110, 214 A.2d 354 (1965).

The plaintiff contends that because § 2709 limits tort liability for the city of New Britain, while the state's other municipalities enjoy no such limitation, § 2709 impermissibly discriminates between persons injured by the tortious acts of New Britain and persons injured under identical circumstances in any other municipality.

It is of no benefit to the defendant that at one time all municipalities were exempt from liability in cases such as this. Courts throughout the nation have consistently held that once the legislative body abolishes sovereign or governmental immunity, it must do so in

a way that comports with federal and state constitutional guarantees of equal protection. See *Peddycoart v. Birmingham,* 354 So. 2d 808 (Ala. 1978); *Harvey v. Clyde Park District,* 32 Ill. 2d 60, 67, 203 N.E.2d 573 (1965); *Brown v. Wichita State University,* 217 Kan. 279, 540 P.2d 66 (1975), rev'd in part on rehearing, 219 Kan. 2, 547 P.2d 1015, appeal dismissed for want of jurisdiction sub nom. *Bruce v. Wichita State University,* 429 U.S. 806, 97 S. Ct. 41, 50 L. Ed. 2d 67 (1976); *Estate of Cargill v. Rochester,* 119 N.H. 661, 406 A.2d 704 (1979); *Patch v. Sebelius,* 320 N.W.2d 511 (N.D. 1982); *Jenkins v. State,* 85 Wash. 2d 883, 540 P.2d 1363 (1975); *Sambs v. Brookfield,* 97 Wis. 2d 356, 293 N.W.2d 504 (1980); *Stanhope v. Brown County,* 90 Wis. 2d 823, 280 N.W.2d 711 (1979).

When a statute is challenged on equal protection grounds, whether under the United States constitution or the Connecticut constitution,[6] the reviewing court must first determine the standard by which the challenged statute's constitutional validity will be determined. If, in distinguishing between classes, the statute either intrudes on the exercise of a fundamental right or burdens a suspect class of persons, the court will apply a strict scrutiny standard wherein the state must demonstrate that the challenged statute is necessary to the achievement of a compelling state interest. *In*

---

[6] Amendment fourteen, § 1 to the United States constitution provides: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Article first, § 20 of the Connecticut constitution, as amended by the fifth amendment, provides: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin or sex."

*re Griffiths,* 413 U.S. 717, 721, 93 S. Ct. 2851, 37 L. Ed. 2d 910 (1973); *San Antonio Independent School District* v. *Rodriguez,* 411 U.S. 1, 30, 93 S. Ct. 1278, 36 L. Ed. 2d 16, reh. denied, 411 U.S. 959, 93 S. Ct. 1919, 36 L. Ed. 2d 418 (1973); *Eisenstadt* v. *Baird,* 405 U.S. 438, 447, 92 S. Ct. 1029, 31 L. Ed. 2d 349 (1972); *Harper* v. *Virginia State Board of Elections,* 383 U.S. 663, 667, 86 S. Ct. 1079, 16 L. Ed. 2d 169 (1966). If the statute does not touch upon either a fundamental right or a suspect class, its classification need only be rationally related to some legitimate government purpose in order to withstand an equal protection challenge.[7] *Trimble* v. *Gordon,* 430 U.S. 762, 767, 97 S. Ct. 1459, 52 L. Ed. 2d 31 (1977); *Massachusetts Board of Retirement* v. *Murgia,* 427 U.S. 307, 312, 96 S. Ct. 2562, 49 L. Ed. 2d 520 (1976).

The class against which § 2709 discriminates consists of those persons injured on New Britain's sidewalks as a result of snow or ice accumulation. This is obviously not the sort of "discrete and insular" minority for whom strict judicial scrutiny is necessary to uphold its rights. *Graham* v. *Richardson,* 403 U.S. 365, 372, 91 S. Ct. 1848, 29 L. Ed. 2d 534 (1971). The plaintiff contended at oral argument that § 2709 must nevertheless face strict scrutiny because it impinges on the fundamental right to recover damages for injuries from tortious acts. See Conn. Const., art. I, § 10.[8] The plaintiff cites the case of *White* v. *State,* 661 P.2d 1272 (Mont. 1983), in support of her argument. There, the Montana Supreme Court construed a state constitutional provision similar to that contained in article first,

---

[7] In certain circumstances, not applicable here, the United States Supreme Court has applied a mid-tier standard. See *Mississippi University for Women* v. *Hogan,* 458 U.S. 718, 102 S. Ct. 3331, 73 L. Ed. 2d 1090 (1982).

[8] Article first, § 10 of the Connecticut constitution provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

§ 10 of our constitution as conferring a fundamental right to recover compensatory damages from any tortfeasor. Id., 1274–75. Hence, the court measured a statute limiting the state's liability for compensatory damages arising from its tortious conduct by the strict scrutiny standard and struck down the statute. Id.

We decline to follow the Montana Supreme Court's lead on this issue. Given that governmental immunity was a well established judicial principle at the time of the Connecticut constitution's adoption in 1818 and in 1965, the provision granting access to courts for redress of grievances found in article first, § 10 cannot be construed as granting an unqualified right to recover unlimited damages from government entities. Thus, we follow the vast majority of courts which have held that statutes limiting or barring government liability are measured by the rational basis test. See, e.g., *Aubertin* v. *Board of County Commissioners of Woodson County, Kansas,* 588 F.2d 781 (10th Cir. 1978); *Boyce* v. *United States,* 523 F. Sup. 1012 (E.D.N.Y. 1981); *Peddycoart* v. *Birmingham,* 354 So. 2d 808 (Ala. 1978); *Leliefeld* v. *Johnson,* 104 Idaho 357, 659 P.2d 111 (1983); *Flax* v. *Kansas Turnpike Authority,* 226 Kan. 1, 596 P.2d 446 (1979); *Winston* v. *Reorganized School District R-2,* 636 S.W.2d 324 (Mo. 1982); *Garcia* v. *Albuquerque Public Schools Board of Education,* 95 N.M. 391, 622 P.2d 699 (Ct. App. 1981); *Paulson* v. *County of Pierce,* 99 Wash. 2d 645, 664 P.2d 1202 (1983); *Binder* v. *Madison,* 72 Wis. 2d 613, 241 N.W.2d 613 (1976).

Under the rational basis test, "[t]he court's function . . . is to decide whether the purpose of the legislation is a legitimate one and whether the particular enactment is designed to accomplish that purpose in a fair and reasonable way." *Pierce* v. *Albanese,* 144 Conn. 241, 249, 129 A.2d 606, appeal dismissed, 355 U.S. 15, 78 S. Ct. 36, 2 L. Ed. 2d 21 (1957); see *New Orleans* v. *Dukes,* 427 U.S. 297, 303, 96 S. Ct. 2513, 49 L. Ed.

2d 511 (1976); *McGowan* v. *Maryland,* 366 U.S. 420, 425, 81 S. Ct. 1101, 6 L. Ed. 2d 393 (1961); *Caldor's, Inc.* v. *Bedding Barn, Inc.,* 177 Conn. 304, 315, 417 A.2d 343 (1979). For our purposes here the test is the same under both the federal and state constitutions. *Caldor's, Inc.* v. *Bedding Barn, Inc.,* supra, 314; *Horton* v. *Meskill,* 172 Conn. 615, 639, 376 A.2d 359 (1977).

The legislature's ostensible purpose in enacting § 2709 was to protect the financial welfare of the municipality by precluding exorbitant damage awards and by discouraging excessive litigation by injured persons hoping to reap such awards. Certainly, the state legislature has a legitimate interest in protecting the individual cities and towns from financial distress. Under certain circumstances a particular municipality may require benefits or protections different from those that the legislature accords to other municipalities. Where the means adopted to effectuate that benefit burden a certain class of citizens (here, those injured on New Britain's sidewalks because of snow or ice accumulation), however, there must exist some identifiable reason for the municipality to receive that special benefit.

The record in this case provides no support for according to New Britain the benefit of a liability more limited than that of any other municipality; and, correspondingly, there is no reason why those injured by New Britain's tortious acts should be denied full recovery of compenstory damages for resulting injuries when those injured in other municipalities may be fully compensated. There has been no showing of any financial, climatic, topographic, demographic, or other circumstances peculiar to the city of New Britain that rationally warrant discriminatory treatment of those injured by defects related to snow or ice on its sidewalks.[9]

---

[9] In arguing that § 2709 satisfies the rational basis test the defendant relies heavily on the decision in *Sambs* v. *Brookfield,* 97 Wis. 2d 356, 293 N.W.2d 504 (1980). There, the Wisconsin Supreme Court upheld against

In *Peddycoart* v. *Birmingham,* supra, the plaintiff claimed that Alabama Code, Tit. 62, § 660, which gave limited governmental immunity only to the city of Birmingham, denied the plaintiff of his constitutional right to equal protection of law. Applying the rational basis test, the Alabama Supreme Court found that there was no rational relationship between the grant of immunity and the city's needs. "Such a classification . . . arbitrarily denies to citizens the right to pursue against that city remedies for injuries to person and property resulting from the exercise of its governmental functions, while they are free to pursue those same remedies against all others . . . . This results in a denial of equal protection of the laws . . . because it constitutes an irrational difference in the treatment of our citizens." Id., 810.

*Flax* v. *Kansas Turnpike Authority,* 226 Kan. 1, 596 P.2d 446 (1979), held that the state's governmental immunity statute could not be applied to immunize the Kansas Turnpike Authority from tort liability because to do so would discriminate unconstitutionally between

an equal protection challenge a statute limiting a municipality's liability to $25,000 for damages arising from highway defects. The statute involved in *Sambs* was distinctly different from § 2709, however, and the analysis made by the Wisconsin Supreme Court is largely inappropriate to this case.

The statute at issue here, § 2709, and those involved in the cases discussed above, apply different levels of liability to government entities within the state. *Peddycoart* v. *Birmingham,* 354 So. 2d 808 (Ala. 1978); *Flax* v. *Kansas Turnpike Authority,* 226 Kan. 1, 596 P.2d 446 (1979). Thus, they discriminate against government tort victims based upon the identity of the particular government entity at fault. The statute challenged in *Sambs* v. *Brookfield,* supra, applied a liability ceiling uniformly to all Wisconsin municipalities for damages resulting from highway defects. The plaintiff claimed the statute violated equal protection guarantees because no statutory ceiling was imposed on damages caused by other municipal torts apart from highway disrepair. Id., 361. The Wisconsin Supreme Court held that the challenged statute withstood its rational basis test. "A municipal unit of government, limited in fund-raising capacity, may lack the resources to withstand substantial unanticipated liability. Unlimited recovery to all victims may impair the ability of government to govern efficiently." Id., 377.

those injured on the turnpike and those injured on other state roads, where no such immunity applied. "The ultimate effect of our series of statutes is to create a small class of motorists who are subjected to discrimination for no other reason than they happened to take the turnpike and as a result, are deprived of a remedy granted the motorist on every other road in Kansas. . . . Such a classification is unconstitutionally discriminatory . . . ." Id., 11.[10]

We express no opinion as to whether the legislature may limit damages that may be recovered from municipalities in general. The problem with § 2709 is that the legislature, in enacting § 13a-149, has made a clear policy statement that municipal liability for damages caused by defective sidewalks should not be limited. Given that clear pronouncement, there is no rational basis behind imposing a liability limit of $1000 in damages for all such torts that happen to occur in New Britain.

There is error, the judgment is set aside, and the case is remanded for a hearing in damages only.

In this opinion the other judges concurred.

---

[10] Another Kansas case illustrates a situation where a governmental immunity statute that applies to one governmental entity but not to another does withstand a rational basis analysis. In *Aubertin* v. *Board of County Commissioners of Woodson County, Kansas,* 588 F.2d 781 (10th Cir. 1978), the court upheld a Kansas statutory scheme that made countries immune from liability for negligence in repairs of bridges or highways but did not immunize municipalities. The court was able to discern a rational basis for the classification based on the vastly different nature of county roads and city streets. Id., 785. Here, no such differentiation exists between the streets and sidewalks of New Britain and those of other Connecticut municipalities.