[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this case, the defendants, City of New London and New London Board of Education have filed a motion for summary judgment against the claim of the plaintiff high school student. The motion really attacks the sufficiency of the complaint. In the complaint, the plaintiff alleges he was attacked by a co-defendant, Darell Taylor, while playing volleyball in the school gym. The complaint further alleges that the plaintiff's injuries were the result of the negligence of the defendants because they failed to control Taylor and restrain him, failed to provide adequate supervision and exercise due care "consistent with the nature of their business to guard . . . students." (Paragraph 7d of First Count). The defendants cite Heiglv. Board of Education, 218 Conn. 1 (1991) for the proposition that a board of education cannot be held liable and is, in fact, immune from liability for the performance of governmental or discretionary acts as opposed to ministerial acts. Id., p. 5. The plaintiff concedes the defendants were engaged in discretionary acts — conducting a game on school grounds during school hours. However, the plaintiff argues that there is an exception to the doctrine of governmental immunity for discretionary acts: "where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm." Burns v. Board ofEducation, 228 Conn. 640, 645 (1994). The defendant counters in a reply brief that "the `imminent harm' exception applies to the qualified immunity of municipal employees but does not permit an exception to municipal governmental immunity for discretionary acts. Both sides refer to the cases of Burns v. Board of Education, supra and Purzycki v. Fairfield, 244 Conn. 101 (supra). The problem is that on the just mentioned issue, the cases are not controlling since their decisions did not explicitly turn on whether the "imminent harm" exception applied to municipalities — it was never raised as such in the cases. In Purzycki, the court, for example, in applying the "imminent harm" rule, does not indicate whether the liability alleged against the school board in that case was derivative and neither does the Appellate Court. Superior Court opinions have been divided on this issue, cf. Maderos v. Sheeton, 23 Conn.L.Rptr. 100, 101 (1998) with Gregory v. City of Bridgeport, 24 Conn.L.Rptr. 454 (1999). CT Page 5256
But why should the liability of municipalities and their boards and the liability of municipal employees not be co-terminus? In dicta, the court in Gordon v. Bridgeport, 208 Conn. 161, 165 (1988) said: "While a municipality itself was generally immune from liability for its tortious acts at common law, Ryszkiewicz v. New Britain,193 Conn. 589, 593 (1984) . . . its employees faced the same personal tort liability as private individuals." Even in Prosser and Keeton onTorts, 5th Ed. § 132, p. 1056, the sainted authors state: "It was once said that as a general rule governmental offices and employees were personally liable for their torts, more or less without exception even where the governmental unit itself was protected by an immunity."
The defendant's argument from this broad language seems to be (A) Municipalities were generally immune from liability (B) Municipal employees were not immune when acting in a discretionary manner if the "imminent harm" exception applied therefore (C) because municipalities were generally immune from liability they cannot be subjected to liability by application of the "imminent harm" rule. Proposition C does not follow from A or B and the analysis founders on the word "generally". "Generally" does not mean never.
Besides the cases and authorities give no situations where, at common law, the municipality had immunity but the municipal employee did not. Also even granting the existence of such examples there is no reason, apparent to the court, why the "imminent harm" rule should apply so as to establish liability against one class of defendants — municipal employees, and not against the other involved class — municipalities.
In fact, the argument seems to be based on, if not a false, certainly too broad a premise — that municipalities at common law had some kind of general sovereign immunity barring suit against them. That doctrine was whittled down and abandoned years ago. The common law in this area has grown and developed and what the court inRyszkiewicz, in fact, said is that ". . . . at common law, Connecticut municipalities enjoy governmental immunity in certaincircumstances, from liability for their tortious acts."193 Conn. at p. 593.[1] Sovereign immunity, having left the field, we have something called "governmental immunity" — the application of which doctrine determines the liability of cities, Giannitti v. City ofStamford, 25 Conn. App. 67, 78 (1991). As applied in Connecticut that doctrine says, except for certain situations, suit is allowed against municipalities. That is the real thrust of § 52-557n of the General Statutes which defines the liability of political subdivisions of the CT Page 5257 state and its employees and, after all, § 52-577n is in part a codification of the common law. Caman v. City of Stamford,746 F. Sup. 248 (1990), cf. Elliott v. Waterbury, 245 Conn. 385, 397
(1998).
What are the situations in most common law jurisdictions where suit is not allowed against municipalities? What are the tests to determine the ambit of the immunity and the rules governing the exceptions to the immunity? Should the exceptions be different when municipalities are sued as opposed to municipal employees?
Shore v. Stonington, 187 Conn. 147 (1982) mentions two tests, admittedly in the context of discussing liability of municipal employees, which state there should be immunity. One test mentioned by the court is the "public duty" test — when a municipal employee acts in fulfillment of a duty to the general public, as opposed to a particular individual, breach of the duty does not provide a remedy in tort. Id., p. 152. The other test which practically leads to similar results but is doctrinally unrelated, is the so-called discretionary — ministerial test. There is immunity for the discretionary but not ministerial acts of municipal employees. What does this case and the tests it mentions have to say concerning suits against municipalities?
McQuillan, Municipal Corporations, referring to the general case, law makes clear that, sovereign immunity having been abandoned, these two tests are also applied to determine the question of whether a municipality is or can be held liable. Vol. 18 § 53.04.10, pp. 156-157; § 53.04.25, pp. 165-167. Suits against municipalities or municipal employees raise the same policy considerations since municipalities only act through their employees.
In any event, regarding these two tests, McQuillan states that: "the discretionary — ministerial distinction is grounded in concerns over constitutional separation of powers . . ." Section 53.22.10, p. 273. That is, it would not be desirable for the judicial branch, through the mechanism of recognizing tort liability, to thereby limit and control executive authority. The public duty rule or test "protects municipalities from liability for failure to adequately enforce general laws and regulations, which were intended to benefit the community as a whole." Section 53.04.25, p. 165. In fact, as said by Judge Leonard Hand in his own flowery way, the threat of liability would "dampen the ardor of all but the most resolute, or the most irresponsible (employees) in the unflinching discharge of their duties." Gregoire v. Biddle, 177 F.2d 527 (CA 2, 1949). Suits both against municipalities and municipal employees raise the same policy CT Page 5258 considerations; as noted, municipalities can only act through their employees. Just as in the case of employees the reasons then for applying these two tests when weighing the propriety of suits against municipalities would be to allow municipalities acting through their employees to perform their functions independent of supervision by other branches of government and in a manner that is efficient and not subject to warrantless fear of liability.
And the same parity of treatment is appropriate regarding exceptions to these two general rules of immunity. In the case of employees, the law has imposed limits on the ambit of the public duty and discretionary — ministerial policy bar to suits despite the important objectives they seek to achieve. Because of the high value we place on the individual even where discretionary activity is involved, where imminent harm is presented to an individual an official's failure to act will not shield him or her from liability. The same logic applies to suits against municipalities. Likewise, as McQuillan suggests the public duty shield is lost to a municipality where it is held that the municipality has a duty to a particular individual as opposed to the general public. Section 53.04.25, p. 165. McQuillan's reference to Shore v. Stonington in his "public duty" discussion reflects that the "imminent harm" exception to immunity also applies to limit the "public duty" bar to liability. See same section, fn. 3, p. 168.
The court, at this point, cannot see why co-terminus liability should not be imposed on municipality and employee where the "imminent harm" doctrine applies nothing in the case law dictates a contrary result. But quite recently the defendants, by a Supplemental Memorandum, have raised another somewhat related argument the court will now attempt to address.
 II
The defendant cites the recent case of Siebold v. Town of NewMilford Board of Education, (Judicial District of Litchfield, 2000 Conn. Super. Lexis 82) where, as here, claims were made against the town and the board. Individuals were not sued. Summary judgment was granted for both defendants on the grounds that municipal entities could not be sued directly in the absence of suit against negligent employees.
Since no individual municipal employee was sued here, the defendant argues summary judgment should be granted. The premise of the Siebold
opinion is related to what has been previously discussed regarding municipal liability and immunity from suit. The court says: CT Page 5259
 "Historically municipalities were immune from liability in tort, but municipal employees [*4] could be held personally liable for their own tortious conduct. Sections 7-465 and 10-235 stand with that group of statutes that the legislature has enacted "to furnish some relief for injustice that would otherwise attend our well-established doctrine of sovereign municipal immunity. Absent such a statute, claimants injured by the misconduct of municipal officers and employees acting in the course of their official duties would be limited to the recourse against individual tortfeasors." (Internal citations omitted.) Norwich v. Silverberg, 200 Conn. 367, 374, 511 A.2d 336 (1986).
This court disagrees with the premise and respectfully disagrees with and does not consider itself bound by the dicta in Silverberg as that dicta is not supported in other cases. In fact, to expand on an earlier theme, over the years our court has whittled down the doctrine of sovereign immunity as applied to municipalities. This is indicated by the very cases Silverberg cites, Tango v. New Haven,173 Conn. 203 (1977) and Gauvin v. New Haven, 187 Conn. 180 (1982). In Tango, the court did not refer to some general notion of sovereign immunity barring all actions against our municipalities; in fact, the court said at 173 Conn. pp. 204-205: "As we stated in Wright v.Brown, 167 Conn. 464, 471 . . . `where the municipality through its agent or employee acts in the performance of a governmental duty, it has a limited immunity from liability; . . . . but when the act complained of is ministerial, the municipality is responsible for its negligent execution." In Gauvin at 187 Conn., p. 184, the court simply says: "A municipality is immune from liability for the performance of governmental acts, as distinguished from ministerial acts." In Ryszkiewicz v. New Britain, supra, the court did not make some general reference to sovereign immunity as barring suits against municipalities in all circumstances. It explicitly said at193 Conn. 593: "At common law, Connecticut municipalities enjoy governmental immunity, in certain circumstances from liability for their tortious acts." Then the court goes on to discuss a type of suit allowed at common law — suits predicated on highway conditions created by nuisance or a positive act of the municipality. Id. Again, § 52-557n basically codifies the common law, it allows actions against municipalities and their employees and its general language reflects the fact that negligence suits generally lie against municipalities.
This court will not rely on dicta in Silverberg to ignore case law CT Page 5260 and statute and thereby adopt a position at odds with most jurisdictions in this country, see McQuillan, Municipal Corporations,
Vol. 18, p. 126:
§ 53.02. General rule: municipalities are liable for their torts.
 The civil liability of municipal corporations for illegal conduct independent of contract has long been recognized. In fact, there seems to have been no time when such corporations were wholly free from responsibility for torts, or civil wrongs, by the common law.
 The majority rule is that in the absence of a statute granting immunity, a municipality is liable for its negligence in the same manner as a private person or corporation. The common law doctrine of sovereign or governmental immunity is a viable defense in this country only in a minority of states.
In our state, governmental immunity is still a viable doctrine for municipalities but it logically should be circumscribed by the "imminent harm" qualification even as to discretionary acts just as that doctrine has been applied to suits against employees of a municipality.
The Siebold opinion reasons that in the case before it suit was explicitly brought under § 7-465 which waives immunity for actions brought against employees and municipalities. The court states that therefore: "A municipality may not be held liable under § 7-465
unless the employee becomes obligated to pay for damages." It refers to Kaye v. Manchester, 20 Conn. App. 439 (1990) where the court granted summary judgment against a plaintiff who sued the town and its board of education for a fall on a public sidewalk but did not sue any individual defendant. At pp. 443-444, the Kaye court quoted language from another case to the effect that "while section § 7-465
provides an indemnity to a municipal employee from his (sic) municipal employer in the event he (sic) suffers a judgment . . . it is quite clear that the municipality does not assume the liability in the first instance. The municipality's liability is derivative." But this case does not stand for the proposition that municipalities as such cannot be independently sued. The problem in a case like Kaye
and Fraser v. Henninger, 173 Conn. 52, 56 (1977) which it cites is that the plaintiffs brought suit against the municipality under §7-465 — that they cannot do procedurally because that statute is merely derivative in nature. But these cases do not stand for the general proposition that but for § 7-465 something called sovereign immunity bars all suits against municipalities — their result CT Page 5261 requires no such conclusion. The complaint does not even allude to §7-465 in this case.
The Siebold opinion does not lead the court to change its opinion that the motion for summary judgment should be denied, accordingly, the motion is denied.
Corradino, J.